## ALLEGHENY MUTUAL CASUALTY CO. *v.* STATE

[No. 171, September Term, 1963.]

*Decided April 6, 1964.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, MARBURY and SYBERT, JJ.

*Cornelius P. Mundy* for appellant.

*Mathias J. DeVito, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, William J. O'Donnell, State's Attorney* and *Robert V. Lazzaro, Assistant State's Attorney,* on the brief, for the appellee.

SYBERT, J., delivered the opinion of the Court.

On July 28, 1961, Gus C. Sclafani and James J. Episcopia (also known as Russo), residents of New York City, were arrested while perpetrating an armed robbery of a jewelry store in Baltimore City. Bail, originally set at $100,000 for each de-

fendant, was reduced to $50,000 for each. Sclafani's wife requested Albert Newman, a surety agent in New York, to arrange bail for both defendants. Newman contacted Matthew Silverman, the president of a New Jersey agency which was a bonding agent for the appellant, Allegheny Mutual Casualty Company. Upon Newman's agreement to hold the appellant company harmless in the event of a default, Silverman caused two bail bonds of Allegheny—in the amount of $50,000 for each defendant—to be filed in the Criminal Court of Baltimore through Herman Kimmelman, a Baltimore representative of Silverman's agency. Newman required certain relatives and friends of the defendants to pledge their properties in order to indemnify Allegheny in case of default under the bonds.

The defendants were arraigned and pleaded not guilty on August 15, 1961. At the arraignment both defendants were represented by a Baltimore attorney, who was said to have been retained by Kimmelman. The case was set for trial on Friday, September 15, 1961. On September 14, 1961, both defendants were in Baltimore and attempted to obtain new counsel. Unsuccessful in this endeavor, Episcopia telephoned a New York attorney late that afternoon and asked him to represent both defendants at their trial on the next day. The New York attorney told Episcopia that if the case were postponed until Monday, September 18, 1961, he would arrange to go to Baltimore to represent them. The defendants then telephoned Kimmelman in Baltimore and asked him to try to get a postponement until Monday and he said that he would try. At about 5:30 P.M. on the same day, according to the lower court's written opinion, prospective new or additional counsel (not named) consulted in chambers with the judge who was to preside at the trial on the following day, requesting a postponement. The request, however, was refused. There is nothing in the record to show that this information was conveyed to the defendants, or that they had any knowledge of such a visit by an attorney to the judge's chambers. Early that evening both defendants returned to New York.

When the case was called the following day, Friday, September 15, the defendants failed to appear. The Baltimore at-

torney who had represented them at their arraignment stated that he had been told by New York counsel that the defendants were on their way but would be late. The court had the bail called and entered a forfeiture of $50,000 on each bond. The court then requested the appearance of the agent for the surety, Kimmelman, who appeared and told the court that he had received a call from New York (it does not appear from whom) informing him that the defendants would be in court early that afternoon. The appellant company was then removed from the rolls of those eligible to write bail in the Criminal Court of Baltimore. The defendants never appeared on the day set for their trial.

Silverman learned of the forfeiture late Friday afternoon and notified Newman in New York. Silverman went to New York Saturday, September 16, and, he testified, the two defendants agreed to return to Baltimore immediately. He drove them back late Saturday night and, as he put it, they surrendered themselves at the Central Police Station in Baltimore at 4:00 A.M. on Sunday, September 17.

On Monday, September 18, 1961, the defendants were brought into court. When the case was called they told the court that they did not wish to be represented by the Baltimore attorney who had appeared for them at the arraignment, and who was present in court. However, the trial judge refused to permit the attorney to strike his appearance because the trial was about to begin. The defendants requested a postponement, which was denied. During a recess, however, the defendants changed their minds and asked the Baltimore attorney to represent them, and, when the court reconvened, they changed their pleas to guilty. Each defendant was then sentenced to serve 20 years in the Maryland Penitentiary.

On October 16, 1961, the appellant bonding company, the defendants, and the indemnitors on each bond, filed a motion pursuant to Code (1957), Art. 26, Sec. 33(b), *infra,* to strike out the forfeitures. The reasons asserted in order to justify that action were:

"That the Defendants did not intentionally or willfully fail to appear in Court nor were they trying to

escape from the jurisdiction as evidenced by their speedy return to the jurisdiction of the Court and their giving themselves into the custody of the Police; that the Defendants had been in the City of Baltimore the day preceding the original trial date of September 15, 1961, that they were endeavoring to arrange for other local counsel and had contacted another Attorney in Baltimore City, when the Defendant, Russo [Episcopia], received word from New York that his wife was ill, and both Defendants returned to New York and there attempted to get an Attorney to represent them; that they were advised that they could have time to obtain other counsel and that the trial would be postponed and for this reason failed to appear on the day of trial, September 15, 1961."

On November 27, 1961, testimony was taken on the motion to strike the forfeiture; on October 9, 1962, counsel for both sides were heard on the motion, and on May 9, 1963, the motion was denied. The appellant suggests that since under Maryland law a forfeiture itself constitutes a judgment, citing *Backus v. State,* 118 Md. 536, 85 Atl. 501 (1912) ; *Albrecht v. State,* 132 Md. 150, 103 Atl. 443 (1918), and *Isgrig v. United States,* 109 F. 2d 131 (C.A.4, 1940), interest at the rate of 6% per annum was running on $100,000 during pendency of the motion and is still running.

The only question before us is whether the motion to strike the forfeiture was properly denied. The relevant statute, Art. 26, Sec. 33(b), reads:

"In all cases the court shall have the discretionary power to strike out the forfeiture of bond or collateral where the defendant can show reasonable grounds for his nonappearance."

While the discretionary power of the court is conditioned upon a showing by the defendant of reasonable grounds for his nonappearance, we believe the Legislature intended that this condition should be liberally construed so as not to do harm to a basic purpose which underlies the granting of bail, that

is, to insure the presence for trial of an accused party. Such a construction is required, we think, when the purpose of the bond is fulfilled within a reasonable time and when there has been little or no prejudice to the State.

Many years ago Chief Justice Marshall, while sitting as a circuit judge in Virginia, aptly stated the traditional theory of bail and the principle that forfeitures are not designed to enrich the State. In *United States v. Feely,* 25 Fed. Cas. 1055, Case No. 15,082 (1813), he said (at p. 1057) :

> "* * * The object of a recognizance is, not to enrich the treasury, but to combine the administration of criminal justice with the convenience of a person accused, but not proved to be guilty. If the accused has, under circumstances which show that there was no design to evade the justice of his country, forfeited his recognizance, but repairs the default as much as is in his power, by appearing at the succeeding term, and submitting himself to the law, the real intention and object of the recognizance are effected, and no injury is done. If the accused prove innocent, it would be unreasonable and unjust in government to exact from an innocent man a penalty, intended only to secure a trial, because the trial was suspended, in consequence of events which are deemed a reasonable excuse for not appearing on the day mentioned in the recognizance. If he be found guilty, he must suffer the punishment intended by the law for his offense, and it would be unreasonable to superadd the penalty of an obligation entered into only to secure a trial."

The cases are in general accord with the principles enunciated by Chief Justice Marshall. See, for example, *State v. Jakschitz,* 136 Pac. 132 (Wash. 1913) ; *State v. Seibert,* 15 P. 2d 281 (Wash. 1932) ; *Western Surety Co. v. People,* 208 P. 2d 1164 (Colo. 1949) ; *Wallace v. State,* 245 S. W. 2d 192 (Tenn. 1952) ; *State v. Hinojosa,* 271 S. W. 2d 522 (Mo. 1954) ; *Sawyer v. Barbour,* 300 P. 2d 187 (Cal. 1956) ; *Central Casualty Company v. State,* 346 S. W. 2d 193 (Ark. 1961). Some of the

cases emphasize that in connection with bail and forfeiture there should be no suggestion of punishment to the surety. See the *Jakschitz, Wallace* and *Sawyer* cases, *supra*. See also Anno. 84 A.L.R. 420.

It is obvious that if the conditions stated in Sec. 33(b) were not liberally construed in favor of striking forfeitures, in proper cases, the sureties on a bail bond would have no reason to pursue the defendant and return him to the jurisdiction of the Court, after a forfeiture for nonappearance had been entered. As stated in 8 Am. Jur. 2d, *Bail and Recognizance*, Sec. 169, p. 875: "Remission of the forfeiture on the defendant's surrender is intended to provide the bail with an incentive for securing the arrest of the defendant. If no part of the penalty of the bond could be remitted, there would be no inducement to the bail to have the defendant arrested and brought to justice." See also *Dudley v. United States*, 242 F. 2d 656 (C.A.5, 1957); *Hicks v. Commonwealth*, 95 S. W. 2d 1076, 1078 (Ky. 1936); *Craig v. Commonwealth*, 155 S. W. 2d 768 (Ky. 1941); *People v. Parkin*, 189 N. E. 480 (N. Y. 1934); *Central Casualty Company v. State, supra*.

A review of the statements made when the pleas of guilty were entered and the evidence presented at the hearing on the motion to strike, convinces us that the defendants were not attempting to evade the jurisdiction of the trial court. Nor was there any apparent design to circumvent justice. This is evidenced by the fact that the defendants agreed to return from New York to Baltimore immediately upon learning of the forfeiture and voluntarily surrendered themselves to the police as soon as they arrived. "Timeliness is an important consideration in determining whether bail will be remitted on surrender of the defendant after default", 8 Am. Jur. 2d, *supra*, Sec. 169, citing *Application of Shetsky*, 60 N. W. 2d 40 (Minn. 1953), and *People v. Continental Casualty Co.*, 92 N. E. 2d 898 (N. Y. 1950).

While the grounds asserted for nonappearance in this case were not entirely satisfactory, the record shows that there was some confusion, at least in the minds of the defendants, as to whether the case had been postponed to allow them to obtain counsel of their own choice. It has been held that an honest

mistake as to the place or time of trial will justify relief to the surety of a bail bond. *Hargis v. Begley,* 112 S. W. 602 (Ky., 1908). The defendants testified that they assumed their case would be postponed until Monday and therefore went to New York to consult with an attorney there because of their inability to retain new local counsel. It is uncontradicted in the record that the defendants were in Baltimore on the day before the date set for the trial, that they unsuccessfully attempted to retain one or more local attorneys, that they called an attorney in New York, and that they requested the surety's local agent to seek a postponement of the case until the following Monday. There was filed in the case an affidavit of the New York attorney which corroborated the defendants' statement that he had been called by them late in the afternoon of September 14, 1961, and agreed to represent them in Baltimore if the case were postponed until Monday.

The actions of the defendants negate any intent to become fugitives in order to escape justice, even though they were, as they admitted, stupid in not making certain that a postponement had been granted before their return to New York instead of relying on representations that an attempt would be made to obtain one. Another weighty consideration is that the defendants were present on the next day court was held after their failure to appear, pleaded guilty (thus saving the time and expense involved in a trial), and received the maximum punishment allowable by statute. There was no showing of prejudice to the prosecution by reason of the delay. The existence or lack of prejudice has often been said to be a significant factor in determining whether there should be a remission of the forfeiture. See Anno. 84 A.L.R. 420, 446, 451.

Since the purpose of the bond was fulfilled by the appearance of the defendants within a reasonable time and the prosecution was not prejudiced, and since the defendants made no attempt to evade justice, but failed to appear because of the mistaken belief that a postponement would be granted, we believe the lower court did not soundly exercise the discretion conferred upon it by sec. 33 (b) in denying the motion to strike the forfeiture. The requirement that "reasonable grounds" be shown for the nonappearance of the defendant obviously means some-

thing less stringent than an absolutely compelling reason, and we think that in exercising the discretionary power conferred by sec. 33 (b), the court should keep this in mind, particularly where, as here, there is no showing of a deliberate purpose to evade the process of the court. The discretion thus committed is a sound one, and not an arbitrary or absolute discretion precluding review by this Court. In the present case we are considering an action that has a very close connection with essential justice (particularly from the viewpoint of the surety and the indemnitors), not a mere regulation of order and progress in a proceeding in court, and therefore the exercise of discretion is reviewable. *Day v. State,* 196 Md. 384, 76 A. 2d 729 (1950); *Newcomer v. Miller,* 166 Md. 675, 681, 172 Atl. 242 (1934). "Where relief from forfeiture is discretionary, the courts must exercise a sound judicial discretion, and must not act arbitrarily or unreasonably, either for or against the sureties", 8 Am. Jur. 2d, *supra,* Sec. 166, p. 872.

The appellee has attempted to draw an analogy between Art. 26, Sec. 33 (b), and the old federal statutory rule, 18 U.S.C.A., former Sec. 601, which gave the federal district courts discretion to strike a forfeiture only when, *inter alia,* there was no willful default, citing *United States v. Nordenholz,* 95 F. 2d 756 (C.A.4, 1938); *United States v. La Vine,* 28 Fed. Supp. 113 (D.C. Md. 1939); and *Continental Casualty Co. v. U. S.,* 314 U. S. 527, 86 L. Ed. 426 (1942). Suffice it to say, without lengthening this opinion unduly, that we do not find these cases, which dealt only with the federal rule, to be controlling in our present inquiry. However, it is interesting to note that when the Federal Rules of Criminal Procedure were adopted in 1946 the following rule was substituted for the former statute: "The court may direct that a forfeiture be set aside, upon such conditions as the court may impose, if it appears that justice does not require the enforcement of the forfeiture." Fed. R. Crim. Proced. 46 (f)(2). We shall request our Rules Committee to consider the advisability of adopting a similar rule.

In the case before us, if the State or the City of Baltimore has been put to any expense by the defendants' delay in appearing, this should fall upon the appellant. Cf. *State v. O'Day,* 216 P. 2d 732 (Wash. 1950); *Restatement, Security,* Sec. 209,

Comment B. Therefore, the case will be remanded, without affirmance or reversal, for further proceedings to ascertain what, if any, expense was incurred by the State or the City by reason of the defendants' failure to appear on the day set for trial. If there was no such expense, or upon payment of such expense, if any, by the appellant (as well as the costs, in any event), the trial court is directed to strike the bail forfeitures.

> *Case remanded without affirmance or reversal for further proceedings in conformity with this opinion; costs to be paid by appellant.*