## JOHN DARYL IRWIN *v.* STATE OF MARYLAND

[No. 533, September Term, 1972.]

*Decided April 11, 1973.*

The cause was submitted on briefs to ORTH, C. J., and MORTON and THOMPSON, JJ.

Submitted by John Daryl Irwin in proper person.

Submitted by *Francis B. Burch, Attorney General, Clarence W. Sharp, Assistant Attorney General, Donald W. Mason, State's Attorney for Allegany County,* and

*Lawrence V. Kelly, Deputy State's Attorney for Allegany County,* for appellee.

ORTH, C. J., delivered the opinion of the Court.

On 6 October 1971 an indictment was filed in the Circuit Court for Allegany County, Criminal Trials 1265, presenting that on 1 July 1971 JOHN DARYL IRWIN broke a storehouse with intent to steal goods of the value of $100 or more (1st count) and assaulted and beat William Kenny (2nd count). Irwin was released pending trial upon posting $1000 cash bail. He failed to appear when called for arraignment on 12 October 1971 and the court gave his attorneys 48 hours to produce him. On 14 October he did not appear before the court. The judge forfeited the bail in open court and recommended that a fugitive warrant be issued. It was thereafter determined that Irwin had been arrested by agents of the FBI on 29 September 1971 in Pittsburgh, Pennsylvania and immediately incarcerated in the Allegheny County Jail in Pittsburgh where he remained until 15 December. On that date he appeared in the U. S. District Court, Western District of Pennsylvania, and was sentenced to five years upon conviction of violation of Title 18, U. S. Code, § 2314, six counts, and to five years upon conviction of Title 18, U. S. Code, § 3150, bond default, the sentences to run concurrently. He was remanded to the custody of the U.S. Marshal and transported to the Federal Penitentiary at Lewisburg, Pennsylvania, where, as far as the record before us discloses, he now is.[1]

On 22 May 1972 the indictment came on for trial in the Circuit Court for Allegany County. Irwin was present pursuant to the Interstate Detainer Act under which the Warden of the U.S. Penitentiary at Lewis-

---

1. This information was set out in a letter dated 26 June 1972 addressed to Irwin at Lewisburg from Ian D. MacLennan, Special Agent in Charge, FBI, Pittsburgh, Pa., a copy of which is attached to Irwin's brief. It states in concise terms what Irwin testified to at a hearing on a motion to strike the bond forfeiture held in the Circuit Court for Allegany County on 22 May 1972. See *infra.* Neither the State nor the court below dispute that Irwin was so incarcerated.

burg, granted temporary custody of him to the Sheriff of Allegany County to appear in Maryland for trial. A mistrial was granted at Irwin's request "on the basis of prejudicial error that occurred in the presence of the jury panel", and Irwin's motion for a continuance of his trial to the October 1972 term of the court was granted. A hearing on a motion by Irwin to strike the forfeiture of bail was heard and decision deferred. On 23 August 1972 an order was entered that the "motion for the remission of a forfeited bond be, and is hereby denied." Irwin noted an appeal. Code, Art. 5, § 5 A (4).

In an opinion accompanying the order denying the motion for the remission of the forfeited bail, the court stated that Irwin had been incarcerated in Pennsylvania since 29 September 1971. It noted that Irwin admitted "jumping" federal bail on 13 September 1971 and found it apparent that "by giving a fake address and telephone number as to where he could be contacted to his attorneys and also by his failure to attempt to contact the attorneys at any time, he was attempting to evade the jurisdiction of the trial court." The court said: "The fact that he 'jumped' a bail bond in Pennsylvania on September 13, 1971, strengthens this court's opinion that he never intended to return to the trial court's jurisdiction when he personally posted bond on June 12, 1971." There was evidence adduced at the hearing to support this conclusion. In denying the motion, however, the judge quoted Code, Art. 26, § 33 (b) :

> "In all cases the court shall have the discretionary power to strike out the forfeiture of bond or collateral where the defendant can show reasonable grounds for his nonappearance . . ."

He observed that Irwin's argument that incarceration in another state is reasonable grounds for the court to strike a forfeiture was "not a novel one" and believed that the majority view was that such incarceration did

not provide "reasonable grounds." He cited *State v. Nelson,* 20 Utah 2d 229, 436 P. 2d 792 (1968), to the effect that such reason for failure to appear is the result of the accused's own voluntary act, and not an act of law preventing his appearance at trial. He distinguished *Allegheny Mutual Casualty Co. v. State,* 234 Md. 278, for the reason that there the court was convinced the defendants were not attempting to evade the jurisdiction of the trial court nor did they have any apparent design to circumvent justice. He made no reference, however, to Code, Art. 26, § 5 A.

*Allegheny Mutual Casualty Co. v. State, supra,* was decided 6 April 1964. At the time, Code, Art. 26, § 33 (b) read as above set [2] out and the court construed it. The Court felt that the requirement that "reasonable grounds" be shown for the nonappearance of a defendant "obviously means something less stringent than an absolutely compelling reason" and thought that in exercising the discretionary power conferred by the statute, the court should keep this in mind, particularly where there was no deliberate purpose to evade the process of the court. 234 Md. at 285-286. It concluded that the discretion thus committed was a sound one, and not an arbitrary or absolute discretion precluding appellate review. It rejected the argument the court had the power to strike a forfeiture only when there was no wilful default and noted the adoption in 1946 of the federal rule: "The court may direct that a forfeiture be set aside, upon such conditions as the court may impose, if it appears that justice does not require the enforcement of the forfeiture." Fed. R. Crim. Proced. 46 (f) (2). The Court said, at 286: "We shall request our Rules Committee to consider the advisability of adopting a similar rule." Although the Court was convinced that the defendants "were not attempting to evade the jurisdiction

---

2. Acts 1971, ch. 707, effective 1 July 1971, added "and shall allow a surety 90 days from the date of failure to appear to produce the defendant in court before requiring forfeiture of bond or collateral."

of the trial court" and did not have "any apparent design to circumvent justice," at 284, their actions negating "any intent to become fugitives in order to escape justice," at 285, it imposed a limitation on the exercise of the discretion of the trial court in striking the forfeiture in the case before it. It held that "if the State or the City of Baltimore has been put to any expense by the defendants' delay in appearing, this should fall upon [the surety of the bail bond]." At 286. It remanded the case for further proceedings to ascertain what, if any, expense was incurred by the State or City by reason of the defendants' failure to appear on the day set for trial. "If there was no such expense, or upon payment of such expense, if any, by [the surety] (as well as the costs in any event), the trial court is directed to strike the bail forfeitures." At 287. See *Harding v. State*, 250 Md. 188.

It seems that the *Allegheny Mutual* opinion conceived two collateral actions. The Rules Committee felt it advisable to recommend a rule similar to the federal rule and on 12 July 1965, § g was added to Rule 777, subtitle "Bail", of the Maryland Rules of Procedure: "The court may set aside or remit the whole or any part of any forfeiture of bail as justice may require." The 1966 session of the General Assembly enacted chapter 331, Acts 1966, effective 1 June 1966, and codified as Code, Art. 26, § 5 A:

> "In any of the courts of this State wherein the court has discretionary power to strike out a forfeiture of bond or collateral where the defendant can show reasonable grounds for nonappearance, evidence of incarceration of a defendant at the time of the forfeiture in any penal institution within the United States shall be a wholly sufficient ground to strike out a forfeiture, provided return of the defendant to the jurisdiction of the court upon expiration of his sentence at no expense to the State, county or municipality is assured."

This statute has not been construed by the appellate courts of this State.[3]

We believe that the holdings in *Allegheny Mutual* and the prescriptions of Code, Art. 26, § 5 A and § 33 (b) complement each other and serve to limit the discretion of the court with respect to striking a forfeiture of bail. On the one hand, they limit the right of a court to refuse to strike a forfeiture. The purpose of the bond or security is to secure a trial, its object being to combine the administration of justice with the convenience of a person accused, but not proved, to be guilty. If the accused does not appear the bail may be forfeited, not as a punishment to the surety or to enrich the Treasury of the State, but as an incentive to have the accused return or be returned to the jurisdiction of the court. *Frasher v. State,* 8 Md. App. 439, 445. Therefore, the discretionary power of the court to strike out a forfeiture is to be liberally construed. It is a sound discretion, not an arbitrary or absolute one, and it is not restricted in its exercise only to instances in which there was no wilful default. "Reasonable grounds" for the non-appearance of an accused are something less stringent than an absolutely compelling reason. Incarceration at the time of the forfeiture in any penal institution within the United States, however, is a "wholly sufficient ground" to strike a forfeiture. On the other hand, *Allegheny Mutual* and the statutes limit the discretion of the court to strike a forfeiture. It seems that regardless of the reason for nonappearance, be it a reasonable ground or a wholly sufficient reason, the surety, whether the accused himself or another, is responsible for costs incurred by the State, a county or a municipality to se-

---

3. The rules of procedure applicable to the Maryland District Court also provide that "The court may set aside or remit the whole or any part of any forfeiture as justice may require." M.D.R. 777 g 2. As to the District Court, however, forfeiture appears to be mandatory. M.D.R. 777 f provides: "Whoever, having been released pursuant to this Rule, wilfully fails to appear before any court or judicial officer as required *shall* incur a forfeiture of any security which was given or pledged for his release . . ." (emphasis supplied).

cure his return to the jurisdiction of the court. Therefore, the court may remit only that part of any forfeiture of bail that is free and clear of such costs. See Rule 777 g.

In the instant case, the incarceration of Irwin was a "wholly sufficient" reason to strike the forfeiture. Whether or not he intended to return to the jurisdiction of the court before his arrest on 29 September 1971, his arrest and incarceration supplied him with the statutory ground excusing his nonappearance. The $1000 security posted, however, was chargeable with such costs as were incurred by the State and Allegany County to return him to the jurisdiction of the Circuit Court for Allegany County. Thus the security is to be remitted only as to that part, if any, in excess of such costs. We shall vacate the order denying the motion to strike the forfeiture, and remand the case for further proceedings to ascertain what, if any, expense was incurred by the State or Allegany County by reason of Irwin's failure to appear for trial. If there was no such expense, the trial court is directed to strike the bail forfeiture. If there was such expense, the trial court is directed to strike the forfeiture only as to that part of the bail in excess of such costs.[4]

> *Order denying motion to strike forfeiture of bail vacated; case remanded for further proceedings in accordance with this opinion; costs to be paid by appellant.*

---

4. The record before us does not disclose whether or not trial has been had on the substantive offenses. It does include an order of the court below of 5 September 1972 that the Warden of the U.S. Penitentiary at Lewisburg, Pennsylvania grant temporary custody of Irwin to the Sheriff of Allegany County, Maryland for trial on 19 October 1972.