968 A.2d 1136

**PROFESSIONAL BAIL BONDS, INC.**

v.

**STATE of Maryland et al.**

**No. 638, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

March 31, 2009.

Michael D. Fraidin, Baltimore, for Appellant.

Sarah W. Rice (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, for Appellee.

Panel: DEBORAH S. EYLER, MATRICCIANI, CHARLES E. MOYLAN, JR. (retired, specially assigned), JJ.

CHARLES E. MOYLAN, Jr., Judge, retired, specially assigned.

> The bail bondsman is not without some coincidental interest in a forfeiture, but he must not be allowed to exaggerate that interest. The forfeiture of collateral remains, at its root, a matter between the State and the defendant, not a matter between the State and the bail bondsman. The forfeiture of a bond is not a punishment of the bail bondsman. It is no more than a continuing incentive to have him find the defendant and return him to the jurisdiction of the court.
>
> .... *Pantazes v. State*, 153 Md.App. 23, 40, 153 Md. App. 23, 834 A.2d 975 (2003)

The defendant in this case was Santos Arnoldo Izaguirre. He is not a party to this appeal. The bail bondsman is. It is the appellant, Professional Bail Bonds, Inc. The State is the appellee. What *Pantazes* tells us about the relationship among those three parties is an overarching truth that needs periodic restatement.

## The Bond Is Forfeited

On April 4, 2007, the Grand Jury for Howard County filed an indictment against the defendant, charging him with the felony of a third-degree sex offense. The Circuit Court for Howard County allowed the defendant to remain free pending his trial on the condition that he post bail in the amount of $35,000 to guarantee his appearance for trial.

At that point, of course, the defendant had the option of posting the $35,000 collateral in any number of ways. He himself could have deposited $35,000 with the clerk of the court. He could have had a family member or a friend act as his surety and post the $35,000 collateral on his behalf. He could, as is frequently the modern practice, have contracted with a professional bail bond company, for the required fee, to post the bond on his behalf. In *Wiegand v. State,* 112 Md.App. 516, 523, 685 A.2d 880 (1996), Judge Wilner (specially assigned) described the range of options for posting bail.

> The requirement of *bail bonds, secured by collateral or the undertaking of a surety,* is a vital part of our core commitment to avoid, whenever possible, the pre-trial detention of accused persons. *Whether the accused himself, his family or friends, or a paid surety secures a bail bond, it is the credible threat of a real pecuniary loss that tends to assure the defendant's appearance in court;* at least that is the assumption that necessarily underlies the use of secured bonds as an alternative to detention.

(Emphasis supplied).

In order to arrange for bail, the defendant engaged the services of the appellant, Professional Bail Bonds, Inc., which posted the bond in the amount of $35,000. On the scheduled trial date of October 23, 2007, however, the defendant failed to appear. Judge Lenore R. Gelfman issued a warrant for the defendant's arrest. The appearance for trial of the defendant, for which the bond had been the guaranty, not having occurred, Judge Gelfman accordingly also ordered the bond to be forfeited, pursuant to Maryland Rule of Procedure 4–217(i)(1), which provides:

(i) **Forfeiture of bond.**—(1) **On defendant's failure to appear—Issuance of warrant.**—*If a defendant fails to appear as required, the court shall order forfeiture of the bail bond* and issuance of a warrant for the defendant's arrest. The clerk shall promptly notify any surety on the defendant's bond, and the State's Attorney, of the forfeiture of the bond and the issuance of the warrant.

(Emphasis supplied).

## Petition to Strike Out Forfeiture

Before an order of forfeiture is finally entered as a judgment in favor of the pertinent governmental entity, the defendant or the defendant's surety has a grace period of 90 days (which may be extended to 180 days) within which to avoid most of the adverse consequences of the forfeiture by actually producing the defendant for trial. Section 4–217(i)(3) provides:

(3) **Satisfaction of forfeiture.**—*Within 90 days from the date the defendant fails to appear,* which time the court may extend to 180 days upon good cause shown, *a surety shall satisfy any order of forfeiture,* either *by producing the defendant in court* or by paying the penalty sum of the bond. *If the defendant is produced within such time by the State, the court* shall require the surety to pay the expenses of the State in producing the defendant and shall *treat the order of forfeiture [as] satisfied* with respect to the remainder of the penalty sum.

(Emphasis supplied).

Immediately following the failure of the defendant to appear and the consequent bond forfeiture of October 23, 2007, the appellant engaged the services of Jack Kessel, who is described as a "fugitive recovery-bounty hunter." The bounty hunter located the defendant in his native Honduras. The bounty hunter traveled to Honduras and spoke with the defendant personally. The defendant, however, made it painfully clear to the bounty hunter that he had no intention of returning to the United States for trial. The bounty hunter

then did nothing more than to report back his essential failure to the appellant.[1]

---

### 1. What May a Bounty Hunter Do?

The very term "bounty hunter" evokes a quaint nostalgia for a more robust era of American legal history. As recently as *Harcum v. State,* 121 Md.App. 507, 515–16, 710 A.2d 358 (1998), this Court, through Judge Davis, did not raise an eyebrow at the use of a bounty hunter by a bereft bail bondsman, although we did not go into any lurid detail about what exactly a bounty hunter might do to collect his bounty.

In *Shifflett v. State,* 80 Md.App. 151, 157–61, 560 A.2d 587 (1989), however, Judge Bell (now Chief Judge of the Court of Appeals) was not nearly so restrained in setting out the common law rights of a bail bondsman vis-a-vis the defendant and the fact that Maryland law has left intact those common law prerogatives:

> Looking to the purpose and intent of Maryland Rule 4–217, *we find no* mention, or even *suggestion, of an intent to change the rights of a bail bondsman to rearrest his or her principal before or after forfeiture of the bond.*

80 Md.App. at 160–61, 560 A.2d 587 (emphasis supplied). Judge Bell quoted with approval from *Taylor v. Taintor,* 83 U.S. (16 Wall.) 366, 369–72, 21 L.Ed. 287 (1872), the Supreme Court opinion that is the Ur-text of the common law right of a bail bondsman to recapture an absconding fugitive.

Appellant's argument that the authority of a bail bondsman to effect an arrest of its principal is no greater than that of a private citizen's right to effect an arrest is simply not the law of Maryland. In point of fact, the authority of a bail bondsman in relationship to his principal is quite a bit broader. In *Taylor,* the Supreme Court of the United States elucidated the relationship:

> *When bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment. Whenever they choose to do so, they may seize him* and deliver him up in their discharge, and if that cannot be done at once, *they may imprison him* until it can be done. They may exercise their rights in person or by agent. *They may pursue him into another State,* may arrest him on the Sabbath, and if necessary, *may break and enter his house for that purpose. The seizure is not made by virtue of new process. None is needed.* It is likened to the rearrest by the sheriff of an escaping prisoner.... In [Anonymous,] 6 Modern [231], it is said:
>
> "*The bail have their principal on a string, and may pull the string whenever they please* and render him in their discharge."
>
> *Id.,* 83 U.S. at 371–72.

80 Md.App. at 158–59, 560 A.2d 587 (emphasis supplied).

Judge Orth, relying on 4 *Wharton's Criminal Law and Procedure* (Anderson), §§ 1833–35, pp. 674–77, wrote to the same effect in *Frasher v. State,* 8 Md.App. 439, 445, 260 A.2d 656 (1970):

> *The purpose of an appearance bond is to secure a trial,* its object being to combine the administration of justice with the convenience of a

On December 17, 2007, the appellant filed its initial Petition to Strike Forfeiture. The possible striking out of a forfeiture is controlled by Rule 4–217(i)(2), which provides:

> (2) **Striking out forfeiture for cause.**—If the defendant or surety can show *reasonable grounds for the defendant's failure to appear,* notwithstanding Rule 2–535, the court shall (A) strike out the forfeiture in whole or in part; and (B) set aside any judgment entered thereof pursuant to subsection (4)(A) of this section, and (C) order the remission in whole or in part of the penalty sum paid pursuant to subsection (3) of this section.

(Emphasis supplied).

After one insignificant procedural short-circuit, the appellant filed an Amended Motion to Strike Forfeiture on March

---

person accused, but not proved, to be guilty. *If the accused does not appear the bail may be forfeited,* not as punishment to the surety or to enrich the Treasury of the State, but *an incentive to the surety on the bail bond to pursue the accused and return him to the jurisdiction of the court.* In accord with the purpose of a bail bond and to make control of the principal by the surety effective, *the surety has been regarded as* subrogated to the rights and means possessed by the State for that purpose and to be *entitled to seize his principal for the purpose of surrendering him in discharge of the surety's liability,* and, *to the extent necessary* to accomplish this, *the surety may restrain him of his liberty. . . . [T]he surety has also been regarded as entitled to take the principal into custody himself, and at common law no process was necessary to authorize the arrest of the principal by his bail.* On the ground that the right to take the principal into custody and surrender him results from the nature of the undertaking by the bail, *the rule permitting arrest without process has been applied to the right to arrest the principal in another state.* But *even where there are statutory provisions* that the bail may arrest the principal on a bailpiece or certified copy of the recognizance, *these provisions have sometimes been held to be cumulative and not to affect the common law right to arrest without process.*

(Emphasis supplied).

In *Shifflett,* this Court concluded that the currently controlling Maryland Rules are but codifications of that common law prerogative of a surety.

> *Maryland Rule 4-217(h)(2) and (i)(3)* are not inconsistent. Indeed, they *are but codifications of the common law right of the bail bondsman to re-arrest his or her principal either before or after forfeiture of the bond.*

80 Md.App. at 159–60, 560 A.2d 587 (emphasis supplied).

26, 2008. On April 18, 2008, Judge Gelfman conducted a hearing on the motion and heard argument from counsel. On April 21, 2008, she filed a Memorandum and Order denying the appellant's motion to strike the forfeiture. It is from that denial that the present appeal has been taken.

## The Function of Posting Collateral

In contending that Judge Gelfman abused her discretion in refusing to strike the forfeiture, the appellant relies primarily on the facts 1) that it had located the defendant in Honduras but 2) that the United States does not have an extradition treaty with Honduras. The appellant's position is that it has done everything it is legally permitted to do to return the defendant to Maryland. That may be true, but it has nothing to do with the striking of the forfeiture. The bail bond company is not being rewarded for its good faith efforts nor is it being punished for its failure. The appellant is but the agent of the defendant. It is the defendant whose malefaction brought about a forfeiture of the defendant's bond. The defendant's original sin remains unredeemed.

The appellant, as we strove to point out in *Pantazes*, presumes too much significance for the relatively peripheral role it plays. The hardest thing for it to grasp is that the case is not really about the bail bondsman at all. The very concept of professional bail bond is only a latter-day wrinkle of a far more basic phenomenon that predates by centuries the first appearance of the first bail bondsman. Two competing and very legitimate social interests are in conflict. On the one hand, there is a strong social interest in not subjecting to undue pretrial detention accused persons who are still presumed to be innocent. On the other hand, there is also a strong social interest in guaranteeing that defendants show up for trial and, if convicted, for sentencing.

Among the ways devised to accommodate these competing interests is the requirement that a defendant post collateral to guarantee his appearance in court. If the defendant fails to appear, the collateral is forfeited. The amount of the collateral is theoretically fixed at the point where the risk of losing

money or property is equal to or greater than the risk of suffering an adverse verdict. As Maryland Rule 4–217(b), "Definitions," now recognizes, the "bail bond" is the "written obligation of a defendant" to appear in court as required, lest he lose his bond or collateral. Subsection (b)(1) defines "bail bond."

> "Bail bond" means a written obligation of a defendant, with or without a surety or collateral security, conditioned on the appearance of the defendant as required and providing for the payment of a penalty sum according to its terms.

(Emphasis supplied).

The defendant himself, of course, could always post his own collateral, or someone else could post the collateral on his behalf. In *Pantazes v. State*, 153 Md.App. 23, 39, 834 A.2d 975 (2003), this Court traced the historic evolution of posting collateral.

> Over the course of time, the practice developed that *collateral might be posted for a defendant by a relative or friend or other accommodation surety.* That such accommodation sureties might be uncompensated is recognized by subsection (b)(6).

> > "*Surety*" means a person other than the defendant who, by executing a bail bond, guarantees the appearance of the defendant and *includes an uncompensated or accommodation surety.*

(Emphasis supplied).

> *As the practice* of posting collateral to guarantee one's appearance *further developed, defendants arranged to procure professional insurers, or bail bondsman, to post collateral for them for a price.* Subsection (b)(7) recognizes the phenomenon.

> > "Surety insurer" means any person in the business of becoming, either directly or through an authorized agent, a surety on a bail bond for compensation....

*In any of its manifestations, it is still the defendant who has, directly or indirectly, put up collateral to guarantee his appearance.*

(Emphasis supplied).

In *Pantazes,* this Court stressed that the focus should be primarily on the behavior of the defendant and not on the behavior of the surety.

At the most basic level, *the fate of the collateral depends upon the behavior of the defendant, not upon the behavior of* any third person, be that third person an accommodation surety or *a professional "surety insurer."* Although, to be sure, subsections (i) and (j) provide some procedural protections for both accommodation sureties and professional bail bondsmen, *the primary focus remains at all times fixed on the defendant. The critical act that triggers forfeiture is the behavior of the defendant in failing to appear in* court when required. *The focus is not on the behavior of the surety* or on the behavior of the State as it may affect the surety.

153 Md.App. at 40, 834 A.2d 975 (emphasis supplied).

## The Obligation of the Bail Bondsman

■ In contending that it was entitled to a striking of the forfeiture, the appellant is very slippery with its use of language. It labels its primary argument that it deserved to have the forfeiture stricken as an assertion that it had "fulfilled its obligation to locate Defendant, who was in Honduras." That is simply not true. The appellant's obligation was not to locate the defendant. Nor was it to make a good faith effort to bring the defendant back to Maryland. Its obligation was to produce the defendant at the Howard County Courthouse to stand trial and nothing less than that. See *Allegheny Mutual Insurance Co. v. State,* 50 Md.App. 169, 173, 436 A.2d 515 (1981) ("The surety is placed, by the statute, in the position of knowing that once he finds a defendant who has fled, *the surety may recover his loss by surrendering the*

*defendant in court.")* (emphasis supplied). That obligation was never fulfilled.

It was certainly not the appellant's obligation to provide the State with information as to the defendant's whereabouts, because it was not the State's job to go and get the defendant, by extradition or otherwise. It was the appellant's exclusive obligation to produce him in court, by whatever means it found necessary. It was a matter of sublime unconcern to the State where the defendant was located. That was the appellant's problem. As long as the appellant produced the defendant, the State could not have cared less whether he had been located and brought back from Towson or from Timbuktu.

As to the essential nature of the appellant's obligation, Chief Judge Orth spelled it out specifically in *Irwin v. State,* 17 Md.App. 518, 524, 302 A.2d 688 (1973):

> The purpose of the bond or security is to secure a trial, its object being to combine the administration of justice with the convenience of a person accused, but not proved, to be guilty. *If the accused does not appear the bail may be forfeited, not as a punishment to the surety* or to enrich the Treasury of the State, *but as an incentive to have the accused return or be returned to the jurisdiction of the court.*

(Emphasis supplied). In *Allegheny Mutual Casualty Co. v. State,* 35 Md.App. 55, 57, 368 A.2d 1032 (1977), Chief Judge Gilbert also stressed that the bottom line obligation is to produce the defendant in court for trial.

> A bond provides substantially that *the defendant and the surety are jointly and severally bound to pay the State a sum of money if the defendant fails to "well and truly make his appearance before" the court* and to answer to the charges.

(Emphasis supplied).

### "Reasonable Grounds" For What?

The appellant asserts repeatedly that Rule 4–217(i) permits the judge to exercise discretion in that regard "if there are

'reasonable grounds.' " Reasonable grounds for what? Once again, the language is treacherous. The phrase "reasonable grounds" is simply left floating in Limbo without being grounded to any precise predicate. Notwithstanding the use of the disembodied phrase, we are not dealing with "reasonable grounds" why the appellant was unable to get the defendant back to Maryland. As a valid reason for striking a forfeiture, the predicate for "reasonable grounds" has nothing to do with the behavior of the bail bondsman but is exclusively grounded in the behavior of the defendant: "If the defendant or surety can show **REASONABLE GROUNDS FOR THE DEFENDANT'S FAILURE TO APPEAR** ..." (Emphasis supplied). Rule 4–217(i)(2).

In this case, the appellant made no such showing. He did not even attempt to make such a showing. He may have shown reasonable grounds for something else, but a showing of something else is immaterial. All that matters is that the appellant did not show reasonable grounds why Santos Arnoldo Izaguirre did not show up at the Howard County Courthouse on October 23, 2007—or at any time thereafter. The absence of an extradition treaty, of course, is not a reasonable ground for why the defendant did not appear for trial in Ellicott City on the scheduled trial day. Before the defendant fled the state, extradition was beside the point. It did not require an extradition treaty for him to stay put. Even after he fled to Honduras, moreover, the absence of an extradition treaty was not a good reason for why the defendant declined to do what he was obliged to do. The defendant did not need an extradition treaty to return to Maryland. There was nothing to prevent him from coming back voluntarily. All he needed was an airline ticket or a bus ticket.

There were obvious reasons why the defendant did not appear for trial, but they are not, in the eyes of the law, reasonable. The defendant very successfully fled the state and fled the country before he could be brought to book for his alleged crime. Once in the asylum of his native Honduras, he deliberately, and perhaps even wisely, chose not to venture out, although he was free at any time to do so. To travel back

to Ellicott City to stand trial would, no doubt, have been an inconvenience. It would, moreover, have been expensive, for the cost of a lawyer alone if for nothing else. The most unassailable reason for avoiding a trial, of course, is that one might be found guilty and imprisoned. None of those reasons, however, would qualify for Rule 4–217(i)(2)'s "reasonable grounds for the defendant's failure to appear."

Our discussion of the immateriality of the appellant's "reasonable grounds" argument in this case parallels our analysis of an indistinguishable argument made by a similarly situated bail bondsman in *Pantazes v. State,* 153 Md.App. at 41, 834 A.2d 975.

> In the entire discussion of the possible striking of a forfeiture, however, *the exclusive predicate of the phrase "reasonable grounds" is, as the statute and the rule expressly declare, the "defendant's failure to appear." The "reasonable grounds" defense has nothing to do with the "good faith" efforts of the surety to locate the defendant* or with the purported obstacles placed in the path of that effort by any errors or lapses on the part of the judicial system.

> In this case, *the appellant did not at any time even make an offer to "show reasonable grounds for the defendant's failure to appear."* All he attempted to show was a reason why he had been unable to locate the defendant, and that, we repeat, is not a legally cognizable reason for striking a forfeiture. *The only question that matters is, "Why isn't the defendant here?" The question, "Why haven't you been able to locate him?" is immaterial. The law's exclusive concern is with the defendant, not the defendant's surety.*

> It is this primary focus that the appellant has missed.

(Emphasis supplied). *See also Allegheny Mutual Casualty Co. v. State,* 35 Md.App. 55, 59, 368 A.2d 1032 (1977) ("We observe that the record is completely devoid of a showing as to 'reasonable grounds for . . . the nonappearance' of the defendants who have been admitted to bail.").

Chief Judge Bell's opinion for the Court of Appeals in *Wiegand v. State,* 363 Md. 186, 196–97, 768 A.2d 43 (2001),

reaffirmed that the only pertinent predicate for the phrase "reasonable grounds for" is the non-appearance of the defendant in court.

Significantly, *the focus is on the defendant's nonappearance and the validity of any reasons for that nonappearance, rather than on the bondsman* or issues affecting the bondsman's assessment of the risk of posting bond.

In the case *sub judice,* at the time of the proceedings under review, the *defendant had not appeared and, thus, did not, and could not have, provided "reasonable grounds" for her nonappearance. Nor has the appellant offered any explanation for the nonappearance.*

(Emphasis supplied).

### When Is the Power to Strike a Forfeiture To Be "Liberally Construed"?

The appellant cites *Irwin v. State,* 17 Md.App. at 524, 302 A.2d 688, for the proposition that "the discretionary power of the court to strike out a forfeiture is to be liberally construed." Devoid of any limiting context, that is strong rhetoric. In *Irwin v. State,* however, the rhetoric had a context. In that case, the defendant Irwin himself posted his own cash bond of $1,000. When he failed to appear for trial in Cumberland on October 14, 1971, his cash bond was forfeited and a fugitive warrant was issued for his arrest. Following an arrest, trial, and conviction in a federal court in Pittsburgh, Pennsylvania, Irwin was returned to Cumberland on an interstate detainer to stand trial on May 22, 1972. It was only after his return to Maryland for trial that Irwin moved to have the forfeiture of his bond stricken. When asked to provide a reasonable ground for his non-appearance on October 14, 1971, he explained that he had been in jail in Pittsburgh. That was the context and those were the circumstances in which this Court stated, 17 Md.App. at 524, 302 A.2d 688, that "the discretionary power of the court to strike out a forfeiture is to be liberally construed."

In the present case, by contrast, the defendant has never been returned to Maryland so that the primary purpose of the

bond could be ultimately achieved. In the present case, by way of further contrast, the defendant was not in jail in Honduras (nor in the hospital nor in the graveyard). He simply chose not to return to Maryland, although he was free and able to do so at any time.

*Irwin v. State* had taken the phrase "liberally construed" from *Allegheny Mutual Casualty Co. v. State*, 234 Md. 278, 282, 199 A.2d 201 (1964). In that case, the two defendants were residents of New York City. They were each free on a $50,000 bail bond. Because of what turned out to be understandable confusion, they were not present for their scheduled court appearance in Baltimore City on Friday, September 15, 1961. Their bonds were accordingly forfeited. When contacted in New York, however, both defendants voluntarily and immediately returned to Baltimore, where they surrendered themselves to the Central Police Station on Sunday, September 17. They were in court and entered pleas of guilty on Monday, September 18. The bondsman moved for the forfeitures to be stricken.

It was in those compellingly extenuating circumstances that the Court of Appeals urged a liberal construction of the rule permitting the striking of a forfeiture.

> While the discretionary power of the court is conditioned upon a showing by the defendant of reasonable grounds of his nonappearance, we believe the Legislature intended that *this condition should be liberally construed so as not to do harm to a basic purpose* which underlies the granting of bail, that is, *to insure the presence of an accused party. Such a construction is required,* we think, *when the purpose of the bond is fulfilled within a reasonable time and when there has been little or no prejudice to the State.*

234 Md. at 282–83, 199 A.2d 201 (emphasis supplied).

The Court of Appeals further explained that under circumstances where the bail bondsman has *successfully effected the return of a defendant* for trial, a refusal to strike a forfeiture would negate any incentive the bondsman would otherwise have to make sure that the fugitive defendant was found and returned to the court for trial.

It is obvious that *if the conditions* stated in Sec. 33(b) *were not liberally construed in favor of striking forfeitures,* in proper cases, *the sureties on a bail bond would have no reason to pursue the defendant and return him to the jurisdiction of the Court,* after a forfeiture for nonappearance had been entered. As stated in 8 Am.Jur.2d, *Bail and Recognizance,* Sec. 169, p. 875: *"Remission of the forfeiture on the defendant's surrender is intended to provide the bail with an incentive for securing the arrest of the defendant. If no part of the penalty of the bond could be remitted, there would be no inducement to the bail to have the defendant arrested and brought to justice."*

234 Md. at 284, 199 A.2d 201 (emphasis supplied).

In its opinion, the Court of Appeals quoted with approval from an opinion of Chief Justice Marshall while sitting as a circuit judge in Virginia in the case of *United States v. Feely,* 25 Fed. Cas. 1055, 1057 (1813):

*If the accused* has, under circumstances which show that there was no design to evade the justice of his country, forfeited his recognizance, but *repairs the default* as much as is in his power, *by appearing at the succeeding term, and submitting himself to the law, the real intention and object of the recognizance are effected, and no injury is done.*

234 Md. at 283, 199 A.2d 201 (emphasis supplied). In this case, by contrast, the defendant has never been returned to Howard County for trial.

In *Wiegand v. State,* 363 Md. at 195, 768 A.2d 43, the Court of Appeals made it clear that a "liberal construction" is the appropriate approach in the circumstance that the defendant has actually been returned for trial.

[A] liberal construction is required *"when the purpose of the bond is fulfilled* within a reasonable time and when there has been little or no prejudice to the State."

(Emphasis supplied).

Judge Gelfman's Memorandum and Order accurately identified the proper predicate which is to be "liberally construed."

[I]n determining whether to strike a "forfeiture, *the exclusive predicate of the phrase "reasonable grounds" is,* as the statute and the rule expressly declare, *the "defendant's failure to appear".* The "reasonable grounds" defense has nothing to do with the "good faith" efforts of the surety to locate the defendant . . .". *Pantazes v. State,* 153 Md.App. 23, 41, 834 A.2d 975 (2003).

(Emphasis supplied).

### The Appellant's Slender (Indeed, Illusory) Reed

In support of his argument, the appellant cites the two cases of *Allegheny Mutual Ins. Co. v. State,* 50 Md.App. 169, 436 A.2d 515 (1981), and *Harding v. State,* 250 Md. 188, 242 A.2d 135 (1968). They offer no support. In *Allegheny Mutual v. State,* the defendant, who had initially failed to appear and whose bond was forfeited, ultimately "waived extradition and voluntarily returned to Maryland." 50 Md.App. at 170, 436 A.2d 515. That is not remotely the situation in the present case. The support afforded by *Harding v. State* is no support at all. That case stands only for the totally irrelevant procedural principle that "if the People's Court orders the bail forfeited, then the discretionary power to strike the forfeiture . . . rests with the People's Court of Montgomery County and not the circuit court." 250 Md. at 191, 242 A.2d 135. Unless we are missing something, that gets us nowhere. Judge Gelfman's conclusion was clearly correct:

In support of its arguments, Petitioner cites two appellate cases, *Allegheny Mut. Ins. Co. v. State* and *Harding v. State,* that discuss the standard for striking bond forfeiture. Petitioner also cites a nisi *prius* decision from the Circuit Court for Montgomery County. The appellate cases are both distinguishable from the case *sub judice.* The Circuit Court case has no precedential value and this Court is without the Montgomery County Judge's rationale.

### The Lack of an Extradition Treaty

The appellant nonetheless doggedly persists in arguing that the lack of an extradition treaty with Honduras made it

impossible for it to do more than it had done. Quite aside from the fact that a good faith effort by the bondsman is not a good reason for striking a bond forfeiture, the case law does not look kindly on the excuse for non-performance advanced by the appellant. In the prototypical case of *Taylor v. Taintor, supra*, the Supreme Court discussed situations wherein a defendant, through no fault of his own, might be prevented from appearing for trial.

> [T]he bail will be exonerated *where the performance* of the condition *is rendered impossible by the act of God, the act of the obligee, or the act of the law. Where the principal dies before the day of performance, the case is within the first category. Where the court before which the principal is bound to appear is abolished* without qualification, *the case is within the second. If the principal is arrested* in the State where the obligation is given *and sent out of the State by the governor*, upon the requisition of the governor of another State, *it is within the third* . . . .
>
> It is equally well settled that *if the impossibility be created by the obligor [the defendant]* or a stranger, *the rights of the obligee [the State] will be in nowise affected.*

83 U.S. at 369–70 (emphasis supplied).

Those reasons, moreover, focus on *a defendant's possible good cause* for not being able to appear for trial, *not upon a bondsman's inability* to produce the defendant for trial. If a defendant is dead before his trial date, he self-evidently cannot keep that date. No such act of God is involved in this case. The defendant is very much alive. Nor has the Circuit Court for Howard County been abolished. No act on the part of the obligee (the State), therefore, prevented the defendant from appearing in that court for trial. Nor has the defendant been arrested in Maryland and then extradited to another State. No act of the law has, therefore, prevented the defendant from presenting himself before the Circuit Court for Howard County. There was thus no external force that prevented the defendant from appearing for trial, had he opted to appear.

One of the earliest cases to discuss this aspect of law in Maryland was *Tyler v. Capitol Indemnity Insurance Co.*, 206 Md. 129, 110 A.2d 528 (1955). The Court of Appeals, in lock step, followed the lead of *Taylor v. Taintor.*

> *The obligation of the surety on bail bond may be discharged in any of three ways: by the act of God, act of the obligee, or act of the law. Taylor v. Taintor, supra,* [83 U.S.] 16 Wallace 366, 21 L.Ed. 287; 8 C.J.S., *Bail,* Sec. 76. If the principal dies, this act of God discharges the surety; if the principal is arrested in the State where the obligation is given and his extradition to another State is granted, the surety would be discharged by act of law. Another example of discharge by act of law is where the principal is arrested on another charge in the State where the obligation was given, and as a result, is in jail at the time the surety is called upon to produce him.

206 Md. at 138–39, 110 A.2d 528 (emphasis supplied). See also *Fred W. Frank Bail Bondsman, Inc. v. State,* 99 Md.App. 227, 232, 636 A.2d 484 (1994).

*Taylor v. Taintor,* 83 U.S. at 372, also made it clear that if the bondsman permits the defendant to leave the state, it is the bondsman's risk and the bondsman is responsible for the consequences.

> *They [the bondsmen] may* doubtless *permit him to go beyond the* limits of the *State* within which he is to answer, but *it is unwise and imprudent to do so; and if any evil ensue, they must bear the burden of the consequences, and cannot cast them upon the obligee [the State].*

(Emphasis supplied).

The danger that a defendant may flee the jurisdiction of the court is a known risk that the bail bondsman assumes and provides insurance against. In this case the defendant was a native of Honduras with apparently minimal ties to Maryland. The defendant's proficiency with the English language was so minimal that he was provided the services of a Spanish–English interpreter for his impending trial. His surety was in a position to know this and to take appropriate preventive

measures. The surety is furnished by law with sweeping prerogatives vis-a-vis its client to guard against the precise risk of what happened in this case, and the surety therefore bears full responsibility for what happens. *Tyler v. Capitol Indemnity*, 206 Md. at 134–35, 110 A.2d 528, made it clear that this bail bondsman in such a situation is no helpless victim deserving of the law's sympathy or pity.

> *Restatement, Security,* Sec. 203, defines bail bonds and in the comment says: " \* \* \* *the principal* is released from the custody of officers of the law and *is considered as being in the custody of a surety of his own selection, whose duty is to assure the principal's subsequent appearance.*" Section 204 in paragraph (1) says the law is that: "The surety on a bail bond may, at his discretion, apprehend and surrender the principal." ... The comment states: *"If the surety believes that there is danger of the defendant's disappearance, the surety may end his own responsibility by surrendering the defendant to the proper officers. Such an act will not be taken usually unless the surety believes that there is a danger of the principal fleeing the jurisdiction.* To enforce such surrender, the surety may personally arrest the defendant within or without the state or may obtain the aid of the officers of the law to compel such surrender. *Since there is a strong public policy in preventing defendants from absconding, the surety is permitted a large discretion as to the steps necessary to effect the defendant's apprehension.* In general the surety may do whatever an officer might do with a warrant for the defendant's arrest, even to the extent of making forcible entry into the defendant's home.... *The large authority allowed the bail in respect of a defendant is justified by the responsibility imposed upon the surety."* ... *"The bail have their principal always upon a string, and may pull the string whenever they please,* and render him in their own discharge."

(Emphasis supplied).

### *Frank v. State* Is Dispositive

The present case is on all fours with the situation that was before this Court in *Fred W. Frank, Bail Bondsman, Inc. v.*

*State,* 99 Md.App. 227, 636 A.2d 484 (1994). In that case, two non-citizen immigrants had been charged with drug offenses in Wicomico County. Through a professional bondsman, each posted a corporate bond of $100,000. Two weeks prior to the scheduled trial date, the bondsman learned that the two had fled to Haiti, a country with which the United States did not at that time have an extradition treaty. When the defendants failed to appear for trial, the judge ordered that the bonds be forfeited.

In a diligent effort to locate the defendants, the bondsman traveled to Haiti on two occasions. When he located them in Haiti, they "refused to return voluntarily to the United States." *Id.* at 229, 636 A.2d 484. The bondsman then sought to have them extradited but was unsuccessful because "the United States and Haiti had no diplomatic relations" at that time. *Id.* at 229–30, 636 A.2d 484. The bondsman there, just as does the appellant here, argued that the absence of an extradition treaty made it *"impossible"* for him to produce the defendants. We rejected the very pertinence of such an argument.

> *We reject appellant's contention that* the circuit court should have stricken forfeiture of the bonds because *it was impossible to produce the defendants. The purpose of a bail bond system is to insure that the party accused is present at trial.*

*Id.* at 231, 636 A.2d 484 (emphasis supplied). Judge Wenner expounded upon the inefficacy of an argument based on impossibility under circumstances wherein the surety has expressly assumed just such a risk.

> We note that in the typical contract case, *the promisor may not rely on the defense of "impossibility"* as an excuse for non-performance *if the promisor assumed the risk.*

*Id.* at 232, 636 A.2d 484 (emphasis supplied).

The bail bondsman's good faith effort, moreover, does not excuse the failure. Indeed, a striking of the forfeiture would affirmatively undermine both the purpose and the effective operation of the bail forfeiture system.

*We acknowledge appellant's efforts* to return the defendants to the United States for trial, but point out that *if the circuit court had stricken forfeiture of the bonds it would not only have undermined the system, but* as appellee points out, *appellant would have no incentive to continue to seek extradition of the defendants* upon restoration of diplomatic relations between the United States and Haiti.

*Id.* at 231, 636 A.2d 484 (emphasis supplied).

The *Frank v. State* opinion then reaffirmed the venerable (1872) wisdom of the Supreme Court that there are but three ways in which a surety may discharge its obligation, none of which was applicable in *Frank* and none of which is applicable here.

We emphasize that there are but three ways in which the surety's obligation may be discharged: act of God, act of the obligee, act of law. *Tyler v. Capitol Indemnity Ins. Co.*, citing *Taylor v. Taintor. None of these applies. The defendants voluntarily fled the country. Appellant insured against that flight, and must now suffer the consequence.*

*Id.* at 232, 636 A.2d 484 (emphasis supplied).

The *Frank* opinion quoted with approval from *State v. Ohayon*, 12 Ohio App.3d 162, 467 N.E.2d 908 (1983), a case in which an absconding defendant had fled to Israel and refused to return to Ohio voluntarily. For policy reasons the United States declined to press Israel for extradition. The Ohio Court of Appeals nonetheless rejected the surety's petition to have the bond forfeiture stricken.

*The escape of a defendant is the business risk of a bail surety. It is precisely the situation which a surety guarantees against.* Appellant insured the risk by securing property of the defendant. *The fact that appellant is now unable to deliver the defendant* or fully collect on his collateral *will not shift the risk to the obligee.* We hold, therefore, that *it is an insufficient defense* in a bond forfeiture proceeding *that appellant is unable to produce the defendant due to foreign policy decisions when the*

*defendant voluntarily fled the country prior* to his initial court appearance date.

99 Md.App. at 232–33, 636 A.2d 484 (quoting 467 N.E.2d at 911–12) (emphasis supplied).

In step with those solid ranks of case law, Judge Gelfman's final conclusion on the merits of the appellant's motion to strike the bail bond forfeiture was unassailably correct.

> In the instant case, the facts are virtually identical to those in *Frank*. The Defendant voluntarily fled the country and did not appear in Court as required. For diplomatic reasons, i.e., lack of an extradition treaty with Honduras, the Defendant cannot be returned to the United States. Also, Petitioner's arguments are virtually identical to those raised in *Frank*.

> This Court finds that, as in *Frank* and *Pantazes, the Petitioner* in this case *"assumed the risk" that the Defendant would not appear at trial. Petitioner's good faith attempts to locate the Defendant are no defense to*

> *Petitioner's failure to appear. It is an insufficient defense that Petitioner is unable to produce the defendant* due to the lack of an extradition treaty with Honduras *when the defendant voluntarily fled the country* prior to his initial court appearance date.

(Emphasis supplied).

### The Prosecutor's Non–Involvement

■ In one final grasping at a straw, the appellant raises as a distinct contention the charge that Judge Gelfman "committed reversible error" when she failed to strike the forfeiture for the reason that "the State had not opposed it." Indeed, in his Amended Motion ... To Strike Forfeiture of March 26, 2008, the appellant went so far as to make the following remarkable but patently inaccurate assertion:

> *It is rare that the State's Attorney would be supporting such a motion* unless the State's Attorney believes the bail

bondsman has reasonable grounds and has done all that can be done in this matter.

(Emphasis supplied).

That assertion was flagrantly inaccurate. The State never supported the appellant's motion to strike the forfeiture. The difference between "not opposing" and "supporting" is no mere nuance. The State simply took no position on the issue because it questioned whether it had any standing to do so. At the hearing before Judge Gelfman on April 18, 2008, the State explained fully why it was taking no position.

The reason why Ms. Weinstein indicated that the State is not opposed to the striking of the forfeiture is not because we didn't want something to be enforced.

*[T]he position of the State* in a motion like this *is a little unclear.* It appears that while we are certainly party to the overall and underlying offense, to this motion *we're a little bit of a collateral party* in that while our actions may affect the outcome, *it's not clear whether or not we should have a say in it or not.* And *that was why Ms. Weinstein stated* to Counsel *that she did not oppose, feeling that she did not know if it was her place or not to do that.*

So I think, ultimately, *that can be read to be more of a deferral to the Court as to the outcome of this motion.*

(Emphasis supplied).

There is no possible way in which that diffident neutrality could be interpreted as "supporting" the appellant's motion. The State, moreover, made it very clear that it was not dismissing its charges against the appellant. In her Memorandum and Order of April 21, 2008, Judge Gelfman ruled, quite properly:

Petitioner believes that this Court should grant the Motions because the State's Attorney for Howard County does not oppose Petitioner's Motions. The Court disagrees with Petitioner's position.

The State has said that it is not entering nolle *prosequi* or dismissal of the case. The case, therefore, is viable. *Under Rule 4–217(i), it is irrelevant whether the State opposes*

*Petitioner's Motions.* A bail bond is forfeited as a matter of course 90 days from the date the defendant fails to appear. After the forfeiture, the clerk of the court enters the order of forfeiture as a judgment against the defendant and surety. The Office of the State's Attorney is tasked with enforcing the judgment. It is for the State to decide whether to enforce any judgment, but *the State may not alter the operation of Rule 4–217.*

(Emphasis supplied).

### The Judge Was Neither Arbitrary Nor Unreasonable

■ Our standard of appellate review for determining whether Judge Gelfman was in error in declining to strike the forfeiture of the bail bond was set out in *Frank v. State*, 99 Md.App. at 230, 636 A.2d 484.

In reviewing the judgment of the circuit court, we must determine whether it acted arbitrarily or unreasonably in refusing to grant appellant's Petition.

See also *Allegheny Mutual v. State*, 234 Md. at 286, 199 A.2d 201; *Hill v. State*, 86 Md.App. 30, 35, 585 A.2d 252 (1991). We do not hesitate to hold that Judge Gelfman acted neither arbitrarily nor unreasonably.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**