768 A.2d 43

**John C. WIEGAND, Bondsman**

v.

**STATE of Maryland.**

**No. 143, Sept. Term, 1998.**

Court of Appeals of Maryland.

March 7, 2001.

Robert A. Diem, Bel Air, for appellant.

Steven M. Sullivan, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for appellee.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY,* CHASANOW,** RAKER, WILNER and CATHELL, JJ.

---

* Rodowsky, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

BELL, Chief Judge.

■ The issue this case presents is whether a bail bonds-man, who posts a bail bond for a defendant whose pretrial release conditions prohibit the defendant from leaving the jurisdiction without court approval and who is not given prior notification of the court's intention to amend the terms of the defendant's pretrial release, is entitled to be discharged from the obligation of the bail bond when the court actually does amend the conditions of pretrial release. The Circuit Court for Harford County determined that, under the facts of this case, he was not. We shall affirm that judgment.

Ebony Jean Smith (the "defendant" or "Smith") was arrested and charged with possession of marijuana with the intent to distribute, possession of marijuana and possession of paraphernalia. She was taken before a court commissioner for an initial appearance, including pretrial release determination. Noting the defendant's lack of family ties, unstable employment status and history, plus short length of State residence—the defendant indicated that she was leaving to return to California—on the date of arrest, the commissioner required, as conditions of pretrial release, among others, a bail bond in the penalty amount of $5000 and that the defendant not leave the State without the court's permission.

The appellant, John C. Wiegand, Bondsman,[1] posted the bail bond on behalf of the defendant. By executing the bail bond, he accepted its conditions and terms:

"THE CONDITION OF THIS BOND IS that the Defendant personally appear, as required, in any court in which the charges are pending, or in which a charging document

---

** Chasanow, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision and adoption of this opinion.

1. The bail bond was executed by Delores J. Wiegand, as agent for the surety Lexington National Insurance Company and that is what is reflected in the Original Bond Information. The pleadings in connection with the bail bond forfeiture, however, name the appellant as the petitioner and indicate that Delores J. Wiegand is with John C. Wiegand Bail Bonds.

may be filed based on the same acts or transactions, or to which action may be transferred, removed, or, if from the District Court, appealed.

"IF, however, the Defendant fails to perform the foregoing condition, this bond shall be forfeited forthwith for payment of the above penalty sum in accordance with the law.

"IT IS AGREED AND UNDERSTOOD that this bond shall continue in full force and effect until discharged pursuant to Rule 4–217."

After a criminal information was filed, the defendant was arraigned in the Circuit Court and given a trial date of February 12, 1997. Thereafter, she sought permission from the court to visit California. By order dated December 23, 1997, the court granted the defendant permission "to go to California for the period of December 23, 1997 to January 15, 1998."

When the defendant's case was called on the trial date, the defendant did not appear, prompting the trial court to issue a writ of body attachment for the defendant. It subsequently issued an order of forfeiture of the bail bond. The appellant filed a Petition To Strike Bond Forfeiture,[2] in which he alleged that the court's authorization of the defendant to leave the State, without giving him prior notice "prohibited the bondsman from rescinding said bond and delivering up the Defendant ... before leaving the State, thus greatly increasing the risk to the bondsman." At the hearing, the appellant recognized that the court had the right to amend the conditions of pretrial release and that "a defendant can always skip and go to California or Timbuktu or wherever, and the bondsman would be put to the same obligation." Nevertheless, he maintained that this case presented a difference:

---

**2.** Prior to the hearing on his petition, the appellant filed an amended petition deleting a clause, "thus greatly increasing the risk to the bondsman," and adding a second ground for striking the forfeiture, *i.e.*, that failing promptly to notify the bondsman, the court "further increased the bondsman's risk of assuring the defendant[']s presence in Court on the [trial] date." That ground is not at issue on this appeal.

"the risk at the time that he actually wrote the bond was that they're living in Maryland and had been so instructed by the court to stay in Maryland, and under those circumstances, of course, the bondsman then looks at the contract and determines the risk they're willing to accept."

The court was not persuaded. It ruled:

"I don't agree with you that there's any distinction between the failure of a criminal defendant to obey a court order to either remain in Maryland or to return from California. If that defendant is going to disobey a court order and become a fugitive from justice, they can do it in many, many different ways, and I don't see where the fact that Judge Carr authorized this defendant to go to California for a temporary period of time and then to return increases your risk one way or the other."

The court thus denied the appellant's petition to strike the forfeiture.

The appellant timely noted an appeal to the Court of Special Appeals. Before consideration by the intermediate appellate court, we granted the writ of certiorari to address this important issue.

In this Court, the appellant argues that he was discharged of his obligation under the bail bond when, without his knowledge and without giving him notice or an opportunity to be heard, the court amended the terms of pretrial release applicable to the defendant. He points out that, before posting the bail bond for the defendant, he was aware of the conditions of pretrial release set by the court commissioner and, thus, could assess the risk he was undertaking. More particularly, he notes the condition prohibiting the defendant from leaving the State without the court's permission. Acknowledging also that the condition permitted, and so he knew that, the court could modify it, the appellant contends that could occur only after he had been given notice and an opportunity for a hearing. For that proposition, he relies on Md. Rule 4–216(i) which provides:

"(i) Amendment of Pretrial Order. After a charging document has been filed, the court, on motion of any party or on its own initiative and after notice and opportunity for hearing, may revoke an order of pretrial release or amend it to impose additional or different conditions of release. If its decision results in the detention of the defendant, the court shall state the reasons for its action in writing or on the record."

The appellant reads the requirement of the rule calling for "notice and an opportunity for a hearing" to include bondsmen. "To interpret the rule otherwise would not be consistent with the intent of the rule," he submits. Critical to the appellant's argument is the notion that the amendment, without notice to the bondsman, of the pretrial release conditions from " 'can't leave' to 'can leave' " is "a monumental change in the conditions of pretrial release," that a change in such conditions also changes the risk the bondsman undertook and, further, that the bondsman's knowledge of the changed conditions would allow him or her to determine on the basis of full information whether to continue the risk. Relevant to the first two propositions, he asserts:

"If the notice and opportunity [to be heard] is to be given to the defendant only and not to the Bondsman, then it can be stated that the court can impose greater or lesser conditions on the Bondsman and the Bondsman would have no knowledge of the pretrial release changed conditions. These changed pretrial release conditions would then change the risk to the Bondsman, and would affect the ability of the Bondsman to comply with its obligations to the court under the surety bond."

As to the third, he states that, with notice, "any amendment or change in pretrial release conditions made by the court allows the Bondsman to reevaluate the risk, no matter how minor or how large and to rescind the bail bond." [3]

---

**3.** For this proposition, the appellant purports to rely on Md. Rule 4–217(h). That section does address the voluntary surrender of a defendant, providing:

To the appellant, it is also relevant that, by writing a bail bond to assure the defendant's appearance for scheduled court proceedings, he entered into a contract with the State. Because parties to a contract are entitled to notice and, more to the point, the Maryland Rules require it, citing and relying on Maryland Rule 4–217(i), the appellant contends that, by failing to give him notice before changing the conditions of the defendant's pretrial release, the court discharged him of any obligation under the bond.[4] This is so, he says, because "[t]he

---

"(h) Voluntary Surrender of the Defendant by Surety. A surety on a bail bond who has custody of a defendant may procure the discharge of the bail bond at any time before forfeiture by:

"(1) delivery of a copy of the bond and the amount of any premium or fee received for the bond to the court in which the charges are pending or to a commissioner in the county in which the charges are pending who shall thereupon issue an order committing the defendant to the custodian of the jail or detention center; and

"(2) delivery of the defendant and the commitment order to the custodian of the jail or detention center, who shall thereupon issue a receipt for the defendant to the surety.

"Unless released on a new bond, the defendant shall be taken forthwith before a judge of the court in which the charges are pending.

"On motion of the surety or any person who paid the premium or fee, and after notice and opportunity to be heard, the court may by order award to the surety an allowance for expenses in locating and surrendering the defendant, and refund the balance to the person who paid it."

Rather than that section, however, the appellant's brief quotes Md. Rule 4–217(i), which provides:

"(i) *Forfeiture of Bond.* (1) On Defendant's Failure to Appear—Issuance of Warrant. If a defendant fails to appear as required, the court shall order forfeiture of the bail bond and issuance of a warrant for the defendant's arrest. The clerk shall promptly notify any surety on the defendant's bond, and the State's Attorney, of the forfeiture of the bond and the issuance of the warrant.

"(2) Striking Out Forfeiture for Cause. If the defendant or surety can show reasonable grounds for the defendant's failure to appear, notwithstanding Rule 2–535, the court shall (A) strike out the forfeiture in whole or in part; and (B) set aside any judgment entered thereon pursuant to subsection (4)(A) of this section, and (C) order the remission in whole or in part of the penalty sum paid pursuant to subsection (3) of this section."

4. To the appellant, it is the lack of notice that is the basis for the relief he seeks; he concedes "that there is no distinction to be made of the Defendant skipping with or without permission."

court, by approving the Defendant's departure from the State, without notice, terminated any control the Appellant might have had over her."

As expected, the State approaches the issue this case presents from a wholly different perspective. It disputes that the appellant was due notice of the court's amendment of the condition of pretrial release related to the defendant's permission to leave the State, arguing that it is not required by the bond itself, the applicable Maryland Rules, or the common law. Indeed, the State contends that, by virtue of the pretrial release determination, rather than a lack of knowledge or legitimate expectation of notice, the appellant "had every reason to expect that the defendant would seek the court's permission to go to California." In fact, it points out,

"The pretrial determination not only informed the bondsman that [the defendant] had been trying to return to California when she made her initial appearance, but recognized the possibility that [the defendant] would be able to leave the State if the court granted her permission. No reasonable person in the bondsman's position should be surprised to find the defendant seeking court permission to return to California, especially in light of the occasion: December 23, or the day before Christmas Eve. That risk was self-evident in the initial appearance report and pretrial release determination."

Thus, the State concludes that the court did not abuse its discretion when it refused to strike the bond forfeiture, a result that is also consistent with that reached by other courts under similar facts and circumstances.[5]

---

5. The State reminds us that "there are but three ways in which the surety's obligation may be discharged: act of God, act of the obligee, act of law" (quoting *Fred W. Frank Bail Bondsman, Inc. v. State,* 99 Md.App. 227, 232, 636 A.2d 484, 485 (1994), in turn, citing *Tyler v. Capitol Indem. Ins. Co.,* 206 Md. 129, 138, 110 A.2d 528, 532 (1955)). It is not at all clear that, for purposes of determining whether a bond should be discharged, the action of the court is not attributed to the State.

In *Allegheny Mutual Cas. Co. v. State,* 234 Md. 278, 282–83, 199 A.2d 201, 203 (1964), where the defendants, who having failed to appear at trial, within a day or so, voluntarily returned to Baltimore with the bondsman and surrendered themselves to the police, this Court considered the propriety of the denial by the Criminal Court of Baltimore of the insurer's motion to strike out the forfeiture of the bail bonds. To resolve the issue the Court construed Md.Code (1957, 1973 Repl.Vol.) Art. 26, § 33(b), which read:

> "In all cases the court shall have the discretionary power to strike out the forfeiture of bond or collateral where the defendant can show reasonable grounds for his nonappearance...."

234 Md. at 282, 199 A.2d at 203. We concluded that the court has discretionary power to strike out a forfeiture, *id.* at 282–83, 199 A.2d at 203; *see Harding v. State,* 250 Md. 188, 190, 242 A.2d 135, 136 (1968); *Irwin v. State,* 17 Md.App. 518, 524, 302 A.2d 688, 691 (1973), but that such discretion is conditioned upon a showing by the defendant of reasonable grounds for the defendant's nonappearance. *Id.* at 282, 199 A.2d at 203. Then, after reviewing the purpose of bail—rather than to punish the surety or enrich the State's treasury, the purpose of the bond is to "secure a trial," *id., quoting United States v. Feely,* 25 Fed. Cas. 1055, 1057 incentive to have the accused return jurisdiction of the court, *id.* at 283–84, concluded further that the discretionary power of the court to strike out a forfeiture is to be liberally construed. The Court also construed "reasonable grounds ... for the nonappearance" in the context of the exercise of that discretion, stating:

> "The requirement that 'reasonable grounds' be shown for the nonappearance of the defendant obviously means something less stringent than an absolutely compelling reason, and we think that in exercising the discretionary power conferred by sec. 33(b), the court should keep this in mind, particularly where, as here, there is no showing of a deliberate purpose to evade the process of the court. The discre-

tion thus committed is a sound one, and not an arbitrary or absolute discretion precluding review by this Court."

*Id.* at 285–86, 199 A.2d at 205–206. Noting that a liberal construction is required "when the purpose of the bond is fulfilled within a reasonable time and when there has been little or no prejudice to the State," 234 Md. at 282–283, 199 A.2d at 203, we stated our belief that the court did not soundly exercise its discretion when it denied the motion to strike forfeiture.

■ Maryland Rule 4–217(i) now sets forth the procedure for forfeiting bail bonds, and it is based on the successor to Art. 26, § 33(b), Md.Code (1957, 1996 Repl.Vol.) Art. 27, § 616½ (e),[6] which mandates certain of the procedures set

---

**6.** That section provides:

"(e)(1) In this subsection, unless the context indicates otherwise, 'produce' or 'produced' means placing the defendant in the custody of a police officer, sheriff, or other commissioned law enforcement officer authorized to make arrests within the jurisdiction of the court. "(2) Subject to item (ii) of this paragraph, any court exercising criminal jurisdiction shall strike out a forfeiture of bail or collateral and discharge the underlying bond, where the defendant can show reasonable grounds for his nonappearance. However the court shall:

"(i) Allow a surety 90 days, or for good cause shown, 180 days from the date of failure to appear to produce the defendant before requiring the payment of any forfeiture of bail or collateral; and "(ii) Strike out a forfeiture of bail or collateral deducting only the actual expense incurred for the defendant's arrest, apprehension, or surrender if the defendant is produced and if the arrest, apprehension, or surrender occurs more than 90 days after the defendant's failure to appear or at the termination of the period allowed by the court to produce the defendant.

"(3) Evidence of incarceration of a fugitive defendant in any penal institution within the United States is a wholly sufficient ground to strike out a forfeiture, if return of the defendant to the jurisdiction of the court on expiration of the sentence at no expense to the State, county, or municipality is assured.

"(4) If a criminal case is stetted, (i) the defendant is entitled to a refund of any collateral put up by him for bail or recognizance; (ii) any other person who has furnished collateral is likewise entitled to refund; and (iii) if any bond or other security has been furnished, the bond or other security shall be discharged, unless it has been declared forfeited and 10 years have elapsed since the bond or other security was posted, in which event neither the defendant nor any other person is entitled to a refund or discharge.

forth in the Rule. Subsection (i)(2) of the Rule addresses the striking of a forfeiture for cause. It provides:

"(2) Striking Out Forfeiture for Cause. If the defendant or surety can show reasonable grounds for the defendant's failure to appear, notwithstanding Rule 2–535, the court shall (A) strike out the forfeiture in whole or in part; and (B) set aside any judgment entered thereon pursuant to subsection (4)(A) of this section, and (C) order the remission in whole or in part of the penalty sum paid pursuant to subsection (3) of this section."

*See* Md. Rule 4–217(i)(2). Under this Rule, the court is required to strike out the forfeiture, in whole or in part, whenever either the defendant or the surety shows reasonable grounds for the defendant's failure to appear. Significantly, the focus is on the defendant's nonappearance and the validity of any reasons for that nonappearance, rather than on the

---

"(5) Any court exercising criminal jurisdiction may not exercise a forfeiture of the bond or collateral posted by a surety and shall return the bond or collateral to the surety where:
"(i) The defendant fails to appear in court; and
"(ii) The surety produces evidence, in compliance with the time constraints of paragraph (2) of this subsection, that:
   "1.   The defendant is incarcerated in a penal institution outside the State;
   "2.   The State's Attorney is unwilling to issue a detainer and subsequently extradite the defendant; and
   "3.   The surety agrees in writing to defray the expense of returning the defendant to the jurisdiction in accordance with paragraph (2) of this subsection.
"(6) Any court exercising criminal jurisdiction that has ordered forfeiture of a bond or collateral, after expiration of the time allotted by paragraph (2) of this subsection for a surety to produce a defendant, shall return the forfeited bond or collateral if the surety, within 10 years from the date the bond or collateral was posted, produces evidence that:
   "(i) The defendant is incarcerated in a penal institution outside the State;
   "(ii) The State's Attorney is unwilling to issue a detainer and subsequently extradite the defendant; and
   "(iii) The surety agrees in writing to defray the expense of returning the defendant to the jurisdiction in accordance with paragraph (2) of this subsection."

bondsman or issues affecting the bondsman's assessment of the risk of posting bond.

In the case *sub judice*, at the time of the proceedings under review, the defendant had not appeared and, thus, did not, and could not have, provided "reasonable grounds" for her nonappearance. Nor has the appellant offered any explanation for the nonappearance. Moreover, the appellant has not suggested, much less presented evidence, that this case falls within Art. 27, § 616½ (e)(3), that is, the defendant is incarcerated in a penal institution in the United States and her return to Maryland at expiration of her sentence and at no expense to the State has been assured. See also Art. 27, § 616½ (e)(5), which provides:

"(5) Any court exercising criminal jurisdiction may not exercise a forfeiture of the bond or collateral posted by a surety and shall return the bond or collateral to the surety where:

"(i) The defendant fails to appear in court; and

"(ii) The surety produces evidence, in compliance with the time constraints of paragraph (2) of this subsection, that:

"1. The defendant is incarcerated in a penal institution outside the State;

"2. The State's Attorney is unwilling to issue a detainer and subsequently extradite the defendant; and

"3. The surety agrees in writing to defray the expense of returning the defendant to the jurisdiction in accordance with paragraph (2) of this subsection."

To be sure, a bail bond is a contract of suretyship: "a tripartite agreement among a principal obligor, his obligee, and a surety." *General Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 259, 492 A.2d 1306, 1309 (1985). It is a direct and original undertaking under which the surety is primarily or jointly liable with the principal obligor and, therefore, responsible at once if the principal obligor fails to perform. *Id.* at 259, 492 A.2d at 1309. Indeed, a surety ordinarily is bound with his principal by the same instrument, executed at the same time, and on the same consideration. *Id.* Thus, a

bail bond is an undertaking by the bondsman to furnish bail on behalf of the defendant, *see Tyler v. Capitol Indem. Ins. Co.,* 206 Md. 129, 134–36, 110 A.2d 528, 530–31 (1955). *See also Stamatiades v. Merit Music Service, Inc.,* 210 Md. 597, 612–15, 124 A.2d 829, 837–38 (1956); *In re Lexington Surety & Indemnity Co.,* 272 N.Y. 210, 5 N.E.2d 204, 205 (1936), as well as a contract with the State, *see Tyler,* 206 Md. at 139–40, 110 A.2d at 532–33, under which the bondsman is obligated to assure the appearance of the defendant in court as required.

As noted, the appellant argues that the court's amendment of the defendant's conditions of pretrial release to permit her to leave the State, after initially refusing that permission was a significant change and resulted in a material increase in the risk which he undertook. Appropriately, the State concedes the proposition underlying the argument, *i.e.,* a change in the agreement by the principal and the obligee, without notice or consent by the surety, when it materially changes the risk, entitles the surety to discharge, acknowledging that, when it is applicable, there is ample authority to support it. See Restatement (Third) of Suretyship & Guaranty (1995) § 41, which, as pertinent, provides:

"If the principal obligor and the obligee agree to a modification, other than an extension of time or a complete or partial release, of the principal obligor's duties pursuant to the underlying obligation:

\* \* \* \*

"(b) the secondary obligor [7] is discharged from any unperformed duties pursuant to the secondary obligation:

---

**7.** Unlike the Restatement (First) of Security, the Restatement (Third) of Suretyship and Guaranty does not recognize the distinction, long recognized in Maryland, see *A/C Electric Co. v. Aetna Ins. Co.,* 251 Md. 410, 413–414, 416, 418, 247 A.2d 708, 710, 711, 712 (1968) and cases there cited, between compensated and other sureties, preferring to use the term "secondary obligor" to designate all sureties. *See* § 41. Although not relevant to the resolution of this case, this Court continues to recognize the distinction, as our recent decision in *Cadle Co. v. Arbor-*

"(i) if the modification creates a substituted contract or imposes risks on the secondary obligor fundamentally different from those imposed pursuant to the transaction prior to modification."

Earlier, Restatement (First) of Security § 128 (1941) discharged a compensated surety, when, without its consent, "the principal and the creditor modify their contract otherwise than by extension of time of payment" and "the modification materially increases [the surety's] risk." *See Greenwell v. American Guaranty Corp.*, 262 Md. 102, 107, 277 A.2d 70, 73 (1971).

This is not a basis for the discharge of the bondsman in this case. The modification in the case sub judice did not create a substituted contract or impose risks "fundamentally different" from those undertaken. Nor did the modification "materially increase[ ]" the risk the bondsman accepted. The appellant admits as much:

"The lower court argues that there is no distinction to be made of the Defendant skipping with or without permission. . . . Appellant agrees. However, that argument is a 'red herring.' The issue before this court is Appellant was not given notice pursuant to the rules to reassess the risk of the bond issued. It is irrelevant whether the Appellant would have rescinded the bond."

Moreover, the appellant's entitlement to discharge is belied by the very terms of the bail bond itself. The bail bond, which the appellant executed and agreed to, provides that "this bond shall continue in full force and effect until discharged pursuant to Rule 4–217." That rule delineates five situations, the occurrence of which results in the discharge of the bail bond. See Md. Rule 4–217(j)(1), which provides:

"(1) Discharge. The bail bond shall be discharged when:

"(A) all charges to which the bail bond applies have been stetted, unless the bond has been forfeited and 10 years

---

*wood II Nominee Corp.*, 360 Md. 240, 242–43, 757 A.2d 791, 792 (2000) confirms.

have elapsed since the bond or other security was posted; or

"(B) all charges to which the bail bond applies have been disposed of by a nolle prosequi, dismissal, acquittal, or probation before judgment; or

"(C) the defendant has been sentenced in the District Court and no timely appeal has been taken, or in the circuit court exercising original jurisdiction, or on appeal or transfer from the District Court; or

"(D) the court has revoked the bail bond pursuant to Rule 4–216 or the defendant has been convicted and denied bail pending sentencing; or

"(E) the defendant has been surrendered by the surety pursuant to section (h) of this Rule."

None of these situations apply to the case *sub judice*. Indeed, the State correctly observes that, although addressing one circumstance in which court action results in discharge of the bail bond, Rule 4–217(j)(1)(D), the rule does not mention the situation where the court modifies the conditions of pretrial release, not to mention delineating it as a discharge of bail bond event. "If the actions of a trial court are consistent with the terms of the bond, then the fact that such actions may, nonetheless, make it less likely that the defendant will appear is of no account." *People v. Tyler*, 797 P.2d 22, 25 (Colo.1990) (en banc).

The result we reach is consistent with that reached by other courts that have addressed this issue, see *United States v. Lozoya*, 2000 WL 702414, 2000 U.S.App. Lexis 11867 (10th Cir.2000) (unreported) (modification of release conditions to permit travel to go to an out-of-state amusement park and by removing him from electronic monitoring); *People v. Rincon*, 43 Colo.App. 155, 603 P.2d 953, 955 (1979) (trial court did not materially alter the surety contract by permitting the defendant to leave the state where, as a condition of the bond, defendant agreed to not leave the state without permission); *State of Arizona v. Surety Ins. Co.*, 123 Ariz. 568, 601 P.2d 331, 332–33 (Ct.App.1979) (provision in bail bond that the

defendant " 'will at all times hold himself amenable to the orders and process of the Court'... not tantamount to a promise by the State that the court will not give him permission to leave the state"); *Stuyvesant Ins. Co. v. United States,* 410 F.2d 524, 526–27 (8th Cir.1969), *cert. denied,* 396 U.S. 836, 90 S.Ct. 96, 24 L.Ed.2d 87 (1969) ("Stuyvesant, as a compensated surety, accepted the onerous conditions of assuring a criminal defendant's appearance for trial and should anticipate the enlargement of travel restrictions in accordance with the terms of the bond. The surety does not have to be notified every time the principal is to appear in court but instead should keep itself posted on when the principal is to appear in order to keep itself informed of any changes made by the court in accordance with the terms and purpose of the bond."); *Detroit Fidelity & Surety Co. v. United States,* 36 F.2d 682, 684 (6th Cir.1930) (permission of the trial court to leave the jurisdiction did not affect the right of a surety to arrest the principal without warrant, and that a Court rule of the District Court where the bond was executed provided for departure from the jurisdiction by leave of the Court), or related ones, *see People v. Tyler,* 797 P.2d 22, 26 (Colo.1990) (subsequent withdrawal of guilty plea did not increase the risk the surety originally accepted); *People v. Smith,* 673 P.2d 1026, 1028 (Colo.Ct.App.1983) (court holds that under conditions of bail bond agreement, which stated that the "defendant shall ... not depart [the court] without leave," trial court could permit defendant's absence at a scheduled hearing; thus, such action did not materially change a condition of the bond contract); *United States v. Egan,* 394 F.2d 262, 265 (2nd Cir.1968) (an order requiring the principal to report daily to the marshal, which was modified to require reporting at ten day intervals, did not enlarge the conditions of bail or enhance the chances of absconding). To similar effect, *United States v. Gambino,* 809 F.Supp. 1048, 1060 (S.D.N.Y.1992) (holding that, under the facts of that case, the removal of the electronic bracelet monitoring devices from defendants did not constitute a significant change in the bail conditions and thus did not increase risk of flight), *aff'd,* 17 F.3d 572, 574 (2nd Cir.1994). *See also*

*State v. Vaughn,* 11 P.3d 211, 217 (Ok.2000) (amended information against appellant principal that added four more felony counts, all stemming from the original transaction, increasing appellant principal's maximum possible sentence was not legal error).

The appellant maintains that this case is controlled by *People v. Calloway,* 40 Colo.App. 543, 577 P.2d 1109 (Colo.Ct. App.1978), On Motion for Reconsideration. It is not. Acknowledging the principle enunciated in *Rodriquez v. People,* 191 Colo. 540, 554 P.2d 291, 292 (Colo.1976), "when a bondsman enters into a surety agreement, he or she undertakes a calculated risk. Events which materially increase that risk have the effect of terminating the obligation," the court held, in that case,

"the surety's risk was materially increased when, without the knowledge of the surety, arrangements were made by defense counsel and the People and with the approval of the court for Calloway, the principal on the bond, to leave Colorado ostensibly to turn himself in to the authorities in California. The action of the court substantially reduced the likelihood of Calloway's complying with the conditions of the bond.

*Calloway,* 577 P.2d at 1111. In so holding, it rejected the State's argument "the language in the conditions of the bond (a printed form furnished by the court) that the defendant 'shall personally appear in the county court ... or the district court ... and not depart the same *without leave* until the final sentence or order of the court' constituted an authorization in advance by the surety for arrangements such as those entered into here" *Id.* (emphasis added).

The Colorado Court of Appeals distinguished *Calloway* in *Rincon, supra,* 603 P.2d at 953. There, the defendant's bond was set at $125,000 with three conditions: (1) that he appear in court on his case "whenever set," (2) that he report weekly to the probation department or as often as the department deemed necessary, and (3) that he not leave the state of Colorado without the consent of the probation department.

Subsequent to Rincon posting the bond, the court, without informing Rincon, twice granted the defendant's request to leave the State temporarily, on the second of which, he absconded. Rejecting Rincon's argument that by permitting the defendant to leave the State, the court materially increased his risk, the appellate court reasoned:

> "The record here ... does not support Brook's argument that the court materially altered the surety contract. Generally, unless the court orders or the surety stipulates otherwise, nothing prevents a defendant on bond from leaving the jurisdiction so long as he appears at all proceedings in his case. ... Unlike the situation in *People v. Calloway, supra,* upon which Brook relies, the court here did not attempt to change the jurisdiction in which Wilburn was to appear, and, prior to the issuance of the bond, the court set up specific conditions under which Wilburn could leave the state. By requiring that Wilburn secure permission before leaving Colorado, the court restricted his freedom of movement, thereby reducing the risk that he would fail to appear. We find no merit in Brook's argument that the surety was not informed of the court's condition or the subsequent grant of permission. The condition was imposed prior to the posting of the bond by Gonzales, and the surety's failure to inform himself of existing bond conditions does not relieve him from responsibility under the bond obligation."

603 P.2d at 955.

Nor does this case even begin to approach the factual predicate of those cases in which a modification of a bail bond to permit the defendant to leave the jurisdiction has been found to have affected materially the bondsman's risk. *See Reese v. United States,* 76 U.S. (9 Wall.) 13, 22, 19 L.Ed. 541 (1870) (holding, where, knowing that the surety's powers of arrest can only be exercised within the United States, the government allowed the defendant to leave the United States: "It would be against all principle and all justice to allow the government to recover against the sureties for not producing their principal, when it had itself consented to his placing

himself beyond their reach and control."); *State v. Weissenburger*, 189 N.J.Super. 172, 459 A.2d 693, 696 (1983) (a plea agreement, of which the bondsman was not informed, in which in exchange for all charges being dropped, the defendant was permitted to relocate, in violation of the bond, and agreed to assist the government in obtaining evidence against suspected drug distributors); *United States v. Galvez–Uriarte*, 709 F.2d 1323, 1324 (9th Cir.1983) (the government authorized the defendant to return to Mexico in direct contravention of the terms of the bond); *United States v. Aguilar*, 813 F.Supp. 727, 729 (N.D.Cal.1993) (plea agreement, without bondsman's knowledge, that authorized the defendant to engage in dangerous activity of assisting the government with narcotics investigations outside of the district where trial was pending materially increased the risk that Defendant would not appear for trial).

The court's modification of the terms of pretrial release in this case falls far short of the modifications, made by other courts, that have been determined to justify the discharge of the bondsman's obligation under the bail bond. *See, e.g., Rodriquez v. People*, 191 Colo. 540, 554 P.2d 291, 293 (1976) (where, consistent with the bond, the defendant had "answered" the charges at the time he pled guilty, the trial court's decision to continue the bail bond until sentencing was a modification in the bail bond agreement which materially increased the surety's risk over that agreed to in the bail bond contract); *People v. Jones*, 873 P.2d 36, 37–38 (Colo.Ct.App. 1994) (continuing bail posted for drug offenses, and making it applicable to later filed habitual offender charges, which significantly increased potential penalty, materially increased the bondsman's risk); *United States v. LePicard*, 723 F.2d 663, 665 (9th Cir.1984) (modification of the conditions of release to include a "break no laws" condition likely did not increase the risk of the defendant's flight, but did introduce a vast number of new ways in which the sureties might find their bond forfeited).

JUDGMENT AFFIRMED, WITH COSTS.