SPECIAL APPEALS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.

78 A.3d 387

BIG LOUIE BAIL BONDS, LLC

v.

STATE of Maryland, et al.

No. 31, Sept. Term, 2012.

Court of Appeals of Maryland.

Oct. 23, 2013.

Erin Murphy and Andrew C. White (Silverman, Thompson, Slutkin & White, PA, Baltimore, MD), on brief, for petitioner.

Beatrice Nunez–Bellamy, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, and Julia Doyle Bernhardt, Asst. Atty. Gen., Baltimore, MD), on brief, for respondents.

**400**

Argued before BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, McDONALD, and BELL *, JJ.

BELL, C.J. (Retired).

The issue in these ten consolidated cases is whether a bondsman's bond liability should be discharged when a defendant who has been deported by Immigration and Customs Enforcement ("I.C.E.") fails to appear in court for trial. The Circuit Court for Baltimore County, based on the information contained in the defendants' Initial Appearance documents, determined that the posted bail bond is properly forfeited when the bail bondsmen knows, or should know, that a defendant is subject to deportation and, as a result, the defendant is deported and fails to appear for trial.

In 2010 and 2011, in separate cases, the defendants [1] were arrested and detained in the Baltimore County Detention Center. For nine of the ten defendants [2], the Initial Appearance documents, which are prepared by District Court Commissioners and made available to sureties for review before they post bond for a defendant, indicated that the defendants were in the country illegally or had an I.C.E. detainer filed against him.[3] The appellant, Big Louie Bail Bonds, LLC

---

\* Bell, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. The defendants are identified in the record as Rafael Del Cid Benavidez, Jaime David Gaitan, Luis Alonzo Bautista Lopez, Elmer M. Portillo Hernandez, Cesar Augusto Amaya–Gomez, Levy V. Gallegos, Elder Avelar, Abidan Mellado Lopez, Juan M. Guzman–Gonzalez, and Jose Efrain Gomez–Molina.

2. The Initial Appearance documents for Jose Efrain Gomez–Molina did not include any information regarding his alien status.

3. A "detainer" is a notice from the Department of Homeland Security ("DHS") informing state and local law enforcement that Immigrations and Customs Enforcement ("I.C.E.") intends to assume custody of an individual in custody. See 8 C.F.R. 287.7 (providing for the detainer provisions under the Immigration and Nationality Act ("INA")). The

("Big Louie"), reviewed the information contained in the defendants' Initial Appearance documents and, acting as surety insurer for Banker's Insurance Company, posted bail bonds for all of the defendants, except for Luis Alonzo Bautista Lopez.[4] By executing the bail bond, the appellant accepted its conditions and terms:

> "THE CONDITION OF THIS BOND IS that the Defendant personally appear, as required, in any court in which the charges are pending, or in which a charging document may be filed based on the same acts or transactions, or to which action may be transferred, removed, or, if from the District Court, appealed.
>
> "If, however, the Defendant fails to perform the foregoing condition, this bond shall be forfeited forthwith for payment of the above penalty sum in accordance with law.
>
> "IT IS AGREED AND UNDERSTOOD that this bond shall continue in full force and effect until discharged pursuant of Rule 4–217."

After the bonds were posted, but before the defendants were released from the detention center, the defendants were taken into federal custody by I.C.E. The defendants subsequently failed to appear for trial, as a result of which the trial court forfeited the bail bond in each case.[5] The appellant filed

---

purpose of the notice is to identify and ultimately remove criminal aliens currently in state and local law enforcement custody.

4. The appellant was not the bondsman for Luis Alonzo Bautista Lopez. Nevertheless, the Lopez case was considered with the cases of the other appellants at the hearing before Judge Brobst, with Jose Molina, Esq. as the trial attorney of record for each case. This Court requested that these cases be addressed together in the above captioned matter.

5. Although the facts in these consolidated cases are broadly similar, their relevant distinctions are as follows:

> The appellant posted a $10,000 bail bond for Rafael Del Cid Benavidez on September 26, 2010. The Initial Appearance documents indicated that Benavidez was in the country illegally, and had an I.C.E. detainer filed against him. According to the appellant, Benavidez was deported on October 29, 2010. He failed to appear for trial on June 16, 2011.

a petition pursuant to Md. Rule 4–217(i)(2),[6] in which it asked

> The appellant posted a $5,000 bail bond for Jaime David Gaitan, a/k/a David Gaitan Castillo on May 4, 2011. The Initial Appearance documents indicated that Castillo had an I.C.E. detainer filed against him. According to the appellant, Gaitan was deported on June 2, 2011. He failed to appear for trial on July 6, 2011.
>
> The appellant posted a $10,000 bail bond for Luis Alonzo Bautista Lopez on March 9, 2011. The Initial Appearance documents indicated that Lopez had an I.C.E. detainer filed against him. According to the appellant, Lopez was deported on April 4, 2011. He failed to appear for trial on June 22, 2011.
>
> The appellant posted a $7,500 bail bond for Elmer M. Portillo Hernandez on March 31, 2011. The Initial Appearance documents indicated that Hernandez had been illegally residing in the United States for two years. According to the appellant, Hernandez was deported on June 20, 2011. He failed to appear for trial on July 11, 2011.
>
> The appellant posted a $50,000 bail bond for Cesar Augusto Amaya–Gomez on March 11, 2011. The Initial Appearance documents indicated that Amaya–Gomez had an I.C.E. detainer filed against him. According to the appellant, Gomez was deported on April 8, 2011. He failed to appear in court on July 28, 2011.
>
> The appellant posted a $1,000 bail bond for Levy V. Gallegos on March 21, 2011. The Initial Appearance documents indicated that Gallegos had informed an officer that he was in the country illegally. According to the appellant, Gallegos was deported on April 25, 2011. He failed to appear in court on September 13, 2011.
>
> The appellant posted a $7,500 bail bond for Elder Avelar on March 31, 2011. The Initial Appearance documents indicated that Avelar was in the country illegally. According to the appellant, Avelar was deported on April 29, 2011. He failed to appear in court on June 16, 2011.
>
> The appellant posted a $20,000 bail bond for Abidan Mellado Lopez on August 7, 2011. The Initial Appearance documents indicated that Lopez was not a citizen, and intended to return to Guatemala. According to the appellant, Lopez was deported on September 23, 2011. He failed to appear in court on October 3, 2011.
>
> The appellant posted a $20,000 bail bond for Juan M. Guzman–Gonzalez on May 5, 2011. The Initial Appearance documents indicated that Guzman–Gonzalez had an I.C.E. detainer filed against him. According to the appellant, Gonzalez was deported on August 9, 2011. He failed to appear in court on February 28, 2012.
>
> The appellant posted a $35,000 bail bond for Jose Efrain Gomez–Molina on March 5, 2011. The Initial Appearance documents did not contain any information regarding Gomez–Molina's alien status. According to the appellant, Molina was deported on April 4, 2011. He failed to appear for trial on May 16, 2011.

6. Maryland Rule 4–217(i)(2) provides:

the District Court to strike the forfeitures. The appellant argued before that court that the defendants' deportation was "an act of law," that made it impossible for the defendants to appear in court. The District Court disagreed. It denied the petitions, stating that the appellant knew, or should have known, that the defendants were subject to deportation when it posted the bonds.

In each of the cases,[7] Big Louie noted an appeal to the Circuit Court for Baltimore County and also filed in that court Amended Petitions to Strike Forfeiture and Release Bond. Attached to nine of the ten amended petitions,[8] albeit not supported by affidavit, was a letter or other document from I.C.E. indicating that each defendant had been deported.[9]

A hearing on seven of the amended petitions [10] was held on

---

"If the defendant or surety can show reasonable grounds for the defendant's failure to appear, notwithstanding Rule 2–535, the court shall (A) strike out the forfeiture in whole or in part; and (B) set aside any judgment entered thereon pursuant to subsection (4)(A) of this section, and (C) order the remission in whole or in part of the penalty sum paid pursuant to subsection (3) of this section."

7. On February 24, 2012, the appellant appealed the District Court's decision refusing to strike the bond forfeiture in the cases of defendants Rafael Benavidez, Jaime Graitan, Luis Lopez, Elmer Hernandez, Augusto Gomez, Levy Gallegos, and Henry Avelar. On June 14, 2012 the appellant similarly appealed the District Court's decision refusing to strike the bond forfeiture in the cases of defendants Abidan Lopez, Juan Gonzalez, and Jose Molina.

8. There was no letter or record attached to the amended petition for Elmer M. Portillo Hernandez.

9. The attached letter or record differed in each amended petition; however, each attachment indicated in some way that the defendant had been deported. For example, attached to the amended petition for defendant Rafael Del Cid Benavidez was a letter from I.C.E. stating that, among a list of persons, Benavidez had been deported to El Salvador on October 29, 2010. By contrast, attached to the amended petition for Jaime David Gaitan was simply a copy of Gaitan's immigration case record indicating that Gaitan had been deported to El Salvador on June 30, 2011.

10. Big Louie first appealed to the Circuit Court for Baltimore County in case numbers 03–C–11–012626 (Benavidez), 03–C–11–012628 (Gaitan),

February 27, 2012, before Judge Norman. The appellant, citing *Professional Bail Bonds, Inc. v. State of Maryland,* 185 Md.App. 226, 968 A.2d 1136 (2009), argued that the proper focus in determining whether a bond forfeiture should be stricken is on whether the defendant attempted to flee to avoid prosecution. Since the defendants in the consolidated cases had not fled, but, rather, had been deported, their failure to appear, it submitted, was based on reasonable grounds and, thus, under Md. Rule 4–217(i)(2), the forfeiture of the bonds should be stricken. The appellant rejected the State's argument that the information contained in the Initial Appearance documents put it on notice that the defendants would be deported, and that failure to be guided by that notice prevents its reliance on the defendants' deportation. The appellant, on the contrary, argued that the detainer was no guarantee that a defendant would be deported before his scheduled court appearance and, therefore, it could not have known with any certainty that the defendants would, in fact, be deported.

Although the Circuit Court agreed that a defendant's deportation was not guaranteed whenever there is a detainer, Judge Norman denied the amended petitions. He found that, given the information contained in the Initial Appearance documents, the appellant knew, or should have known, that the defendants were subject to deportation when it posted their bonds. He also disagreed with the appellant's interpretation of *Professional Bail Bonds,* stating:

> "[I]t's not that there's an assurance by the [bondsmen] that the Defendant's not going to flee. Quite the contrary. It is an assurance, a guarantee that the bondsman will produce the Defendant at trial. That's what this Court interprets those cases to mean."

The appellant timely noted appeals in all of these cases to the Court of Special Appeals. That court, pursuant to Md.

03–C–11–012629 (Lopez), 03–C–11–012630 (Hernandez), 03–C–11–012631 (Amaya–Gomez), 03–C–11–012632 (Gallegos), and 03–C–11–012635 (Avelar).

Rule 8–132,[11] transferred the appeals to this Court. We granted certiorari. *Big Louie Bail Bonds, LLC v. State of Maryland,* 427 Md. 62, 46 A.3d 404 (2012).

The three remaining appeals were heard by Judge Brobst on June 15, 2012.[12] She, like Judge Norman, denied the amended petitions, finding, based on the information contained in the Initial Appearance documents, that the defendants knew, or should have known, that the defendants were subject to deportation and, therefore, citing *Professional Bail Bonds,* "assumed the risk that the defendants would not appear for trial" when it posted the bonds. The appellant timely noted appeals to this Court. Treating the notices of appeal as petitions for writs of certiorari, we granted certiorari, *Big Louie Bail Bonds, LLC v. State of Maryland,* 427 Md. 62, 46 A.3d 404 (2012), and consolidated them with the already pending cases.

A bail bond is "a written obligation of a defendant, with or without a surety or collateral security, conditioned on the appearance of the defendant as required and providing for the payment of a penalty sum according to its terms." Maryland Rule 4–217(b)(2). Its nature and relation to the State was discussed in *Wiegand v. State,* 363 Md. 186, 768 A.2d 43 (2001):

"To be sure, a bail bond is a contract of suretyship: 'a tripartite agreement among a principal obligor, his obligee, and a surety.' *General Motors Acceptance Corp. v. Daniels,* 303 Md. 254, 259, 492 A.2d 1306, 1309 (1985). It is a direct and original undertaking under which the surety is primari-

---

**11.** Md. Rule 8–132 provides:

"If the Court of Appeals or the Court of Special Appeals determines that an appellant has improperly noted an appeal to it but may be entitled to another court exercising appellate jurisdiction, the Court shall not dismiss the appeal but shall instead transfer the action to the court apparently having jurisdiction, upon the payment of costs provided in the order transferring the action."

**12.** Big Louie noted a second group of appeals to the Circuit Court for Baltimore County in case numbers 03–C–11–3631 (Gomez), 03–C–12–3693 (Guzman–Gonzalez), and 03–C–12–009629 (Gomez–Molina).

ly or jointly liable with the principal obligor and, therefore, responsible at once if the principal obligor fails to perform. *Id.* at 259, 492 A.2d at 1309. Indeed, a surety ordinarily is bound with his principal by the same instrument, executed at the same time, and on the same consideration. *Id.* Thus, a bail bond is an undertaking by the bondsman to furnish bail on behalf of the defendant, *see Tyler v. Capitol Indem. Ins. Co.*, 206 Md. 129, 134–36, 110 A.2d 528, 530–31 (1955). *See also Stamatiades v. Merit Music Service, Inc.*, 210 Md. 597, 612–15, 124 A.2d 829, 837–38 (1956); *In re Lexington Surety & Indemnity Co.*, 272 N.Y. 210, 5 N.E.2d 204, 205 (1936), as well as a contract with the State, *see Tyler*, 206 Md. at 139–40, 110 A.2d at 532–33, under which the bondsman is obligated to assure the appearance of the defendant in court as required."

363 Md. at 197–98, 768 A.2d at 49.

■■■■ The effect of the defendant not appearing as required is the forfeiture of the bail bond. That is prescribed by Rule 4–217(i), based on Maryland Code (2001, 2008 Repl.Vol., 2011 Cum.Supp.) § 5–208(b) of the Criminal Procedure Article,[13] which also sets out the procedure for forfeiting bail bonds and authorizes the striking of a forfeiture, once entered, for cause. It provides, as relevant:

"(1) If a defendant fails to appear as required, the court shall order forfeiture of the bail bond and issuance of a warrant for the defendant's arrest. The clerk shall promptly notify any surety on the defendant's bond, and the State's Attorney, of the forfeiture of the bond and the issuance of the warrant.

"(2) If the defendant or surety can show reasonable grounds for the defendant's failure to appear, notwithstanding Rule 2–535 (Revisory Power), the court shall (A) strike out the forfeiture in whole or in part; and (B) set aside any

---

**13.** Md.Code Ann., Crim. Proc. § 5–208(b) provides, in pertinent part: "Subject to paragraph (2) of this subsection, a court that exercises criminal jurisdiction shall strike out a forfeiture of bail or collateral and discharge the underlying bail bond if the defendant can show reasonable grounds for the defendant's failure to appear."

judgment entered thereon pursuant to subsection (4)(A) of this section, and (C) order the remission in whole or in part of the penalty sum paid pursuant to subsection (3) of this section."

While Rule 4–217(i)(1) requires the forfeiture of the bail bond upon the non-appearance of the defendant, the decision to strike the forfeiture, once entered, is discretionary with the court, "to be liberally construed," conditioned upon a showing by the defendant of reasonable grounds for the defendant's nonappearance. *Wiegand v. State*, 363 Md. at 194, 768 A.2d at 47 (citing *Allegheny Mut. Cas. Co. v. State*, 234 Md. 278, 282–284, 199 A.2d 201, 203 (1964)). The burden of demonstrating "reasonable grounds" lies with the surety who seeks to strike a bond forfeiture. *Allegheny Mut. Cas. Co. v. State*, 234 Md. at 282, 199 A.2d at 203. We have interpreted the term "reasonable grounds" in the context of the court's exercise of discretion:

> "The requirement that 'reasonable grounds' be shown for the nonappearance of the defendant obviously means something less stringent than an absolutely compelling reason, and we think that in exercising the discretionary power conferred by [the predecessor of CP § 2–508], the court should keep this in mind, particularly where, as here, there is no showing of a deliberate purpose to evade the process of the court. The discretion thus committed is a sound one, and not an arbitrary or absolute discretion precluding review by this Court."

*Id.* at 285–86, 199 A.2d at 205–06.

We have identified and recognized three ways in which the obligation of the surety on a bail bond may be discharged: by the act of God, act of the obligee,[14] or act of the law. *Tyler v. Capitol Indem. Ins. Co.*, 206 Md. 129, 138, 110 A.2d 528, 532 (1955). In that case, we explained two of the three ways:

> "If the principal dies, this act of God discharges the surety; if the principal is arrested in the State where the obligation

---

**14.** The obligee under a bail bond is the State. *Young v. State*, 7 G. & J. 253, 255 (1835).

is given and his extradition to another State is granted, the surety would be discharged by act of law. Another example of discharge by act of law is where the principal is arrested on another charge in the State where the obligation was given, and as a result, is in jail at the time the surety is called upon to produce him."

*Id.* This is also the view of the matter taken by the Supreme Court of the United States. In *Taylor v. Taintor,* 16 Wall. 366, 83 U.S. 366, 369–70, 21 L.Ed. 287, 289–90 (1872), which we cited in *Tyler,* that Court stated:

"It is the settled law of this class of cases that the bail will be exonerated where the performance of the condition is rendered impossible by the act of God, the act of the obligee, or the act of the law. Where the principal dies before the day of performance, the case is within the first category. Where the court before which the principal is bound to appear is abolished without qualification, the case is within the second. If the principal is arrested in the State where the obligation is given and sent out of the State by the governor, upon the requisition of the governor of another State, it is within the third. In such cases the governor acts in his official character, and represents the sovereignty of the State in giving efficacy to the Constitution of the United States and the law of Congress. If he refuse, there is no means of compulsion. But if he act, and the fugitive is surrendered, the State whence he is removed can no longer require his appearance before her tribunals, and all obligations which she has taken to secure that result thereupon at once, *ipso facto,* lose their binding effect. The authorities last referred to proceed upon this principle."

(Footnotes omitted). The Court made clear that "the law which renders the performance impossible, and therefore excuses failure, must be a law operative in the State where the obligation was assumed, and obligatory in its effect upon her authorities." *Id.* at 371, 21 L.Ed. at 290.[15]

---

**15.** The bail bond forfeiture in that case was not stricken because the obligee under the bond was Connecticut, but the defendant, who failed

The appellant argues that deportation is the reason that the defendants failed to appear, and that their being deported is an act of law. The appellant consequently believes that the Circuit Court erroneously denied its amended petitions to strike. The appellant reasons that it has satisfied the requirements of Maryland Rule 4–217(i)(2) by showing that an act of law, deportation, was responsible for the defendants' failure to appear as required, and an act of law is a reasonable ground for a bail bond forfeiture to be stricken.

Moreover, the appellant submits that it would be inequitable to permit the State to retain the bond posted for a deported defendant when it was on notice that the defendant was subject to an I.C.E. detainer and could have sought his or her retention for the purpose of prosecution. In that regard, the appellant notes that:

> "The Immigration Detainer, in the portion to be completed by the law enforcement agency currently holding the defendant, states, 'Once in our custody, the subject of this detainer may be removed from the United States. If the individual may be the victim of a crime, or if you want this individual to remain in the United States for prosecution or other law enforcement purposes, including acting as a witness, please notify the ICE law enforcement support center at (802) 872–6020.' "

The appellant concludes from this that the State, unlike a bondsman, had the opportunity to delay the deportation so that the defendants could stand trial. Thus, the appellant argues, it would be inequitable to permit the State to retain the bond amount where it knew the defendant was subject to deportation, and had the opportunity to, at least, delay the deportation itself.

---

to appear as required, was arrested in New York, where he had gone while on bail, and extradited to Maine, upon the petition of the Governor of Maine, where he was tried, convicted and imprisoned. *Taylor*, 83 U.S. 366, 369–70, 21 L.Ed. 287, 289–90. Thus, the performance by the defendant was rendered impossible by the defendant's own actions—going to New York—and not by the action of the Governor of New York in extraditing the defendant to Maine. *Id.*

The State, of course, does not agree and offers two arguments in support of the rulings of the Circuit Court. It argues, first, as the lower court found, that the record establishes that the appellant knew, or should have known, that the defendants faced deportation when it posted bond, and, therefore, that the defendants were deported is not a reasonable ground under Rule 4–217(i)(2) to strike the bail bond forfeiture. The State reasons:

"Bondsmen should not be permitted to target defendants they know are subject to deportation, receive payment for posting bonds on their behalf, and then be excused from any further responsibility due to the defendants' likely deportations."

The State's second argument challenges the ripeness of the appellant's case and the sufficiency of the evidence to entitle the appellant to relief. It argues that the appellant failed to present any evidence in any of the cases that demonstrated that the defendants had exhausted their administrative remedies to delay deportation and, in any event, that there was no evidence "that the defendant[s] left the country involuntarily, that the State played any role in effectuating the deportation of the defendant[s], or that the defendant[s were] unable to return to this country temporarily for trial." Significant to the State's latter argument are *Professional Bail Bonds, Inc. v. State*, 185 Md.App. 226, 968 A.2d 1136 (2009), and *Fred W. Frank Bail Bondsman, Inc. v. State*, 99 Md.App. 227, 636 A.2d 484 (1994), in which the Court of Special Appeals effectively held that a forfeited bond should not be stricken if the defendant voluntarily flees the jurisdiction. It argues that these cases stand for the proposition that "Maryland has repeatedly rejected the suggestion that the impossibility of retrieving a defendant from a foreign country can constitute reasonable grounds for the defendant's failure to appear in court."

In *Professional Bail Bonds*, the appellant, a bail bonds company, posted a $35,000 bond on behalf of the defendant who was charged with a felony third degree sexual offense. 185 Md.App. at 229–30, 968 A.2d. at 1137–38. The bond was

forfeited when the defendant failed to appear in court. *Id.*
Although the appellant eventually located the defendant in
Honduras, the defendant refused to return in order to stand
trial, and the United States did not have an extradition treaty
with Honduras. *Id.* at 230–31, 968 A.2d. at 1138–39 The
appellant argued that the trial court abused its discretion in
refusing to strike the forfeiture when it was presented with
uncontroverted evidence that (1) the surety had located the
defendant in Honduras, but that (2) the defendant could not be
extradited to Howard County because the United States does
not have an extradition treaty with Honduras. *Id.* at 233, 968
A.2d. at 1140. In rejecting the surety's argument that those
facts established "reasonable grounds" for the defendant's
failure to appear, the Court of Special Appeals explained:

> "There were obvious reasons why the defendant did not
> appear for trial, but they are not, in the eyes of the law,
> reasonable. The defendant very successfully fled the state
> and fled the country before he could be brought to book for
> the alleged crime. Once in the asylum of his native Hondu-
> ras, he deliberately, and perhaps even wisely, chose not to
> venture out, although he was free at any time to do so. To
> travel back to Ellicott City would, no doubt, have been an
> inconvenience. It would, moreover, have been expensive for
> the cost of a lawyer alone if for nothing else. The most
> unassailable reason for avoiding a trial, of course, is the fear
> that one might be found guilty and imprisoned. None of
> those reasons, however, would qualify for Rule 4–217(i)(2)'s
> reasonable grounds for the defendant's failure to appear."

*Id.* at 237–38, 968 A.2d. at 1143. The intermediate appellate
court also made the point that "the predicate for reasonable
grounds has nothing to do with the behavior of the bail
bondsman but is exclusively grounded in the behavior of the
defendant." *Id.* at 237, 968 A.2d. at 1142.

The second case involved two immigrants charged with
narcotics offenses in Wicomico County. *Fred W. Frank,* 99
Md.App. at 228, 636 A.2d at 485. The appellant posted a bond
of $100,000 on behalf of each defendant. *Id.* at 229, 636 A.2d
at 485. Shortly before trial, both defendants fled to Haiti, a

country that did not share an extradition agreement with the United States. *Id.* The bonds were subsequently forfeited, and the defendants refused to return to Maryland for trial. *Id.* The surety argued that it was "impossible" to have the defendants present for trial due to the lack of an extradition agreement. *Id.* at 230, 636 A.2d at 486. Like its decision in *Professional Bail Bonds,* the Court of Special Appeals rejected that argument. It stated:

> "We emphasize that there are but three ways in which the surety's obligation may be discharged: act of God, act of the obligee, act of law.... None of these applies. The defendants voluntarily left the country. Appellant insured against that flight, and must now suffer the consequence."

*Id.* at 232, 636 A.2d at 486. It relied on *State v. Ohayon,* 12 Ohio App.3d 162, 467 N.E.2d 908 (1983), a case with virtually identical facts: the defendant, on bail, fled to Israel and the United States did not press Israel for the defendant's extradition when he refused to return voluntarily. *Id.* at 909. The Ohio appellate court rejected the surety's argument for striking the forfeiture, holding:

> "The escape of a defendant is the business risk of a bail surety. It is precisely the situation which a surety guarantees against. Appellant insured the risk by securing property of the defendant. The fact that appellant is now unable to deliver the defendant or fully collect on his collateral will not shift the risk to the obligee. We hold, therefore, that it is an insufficient defense in a bond forfeiture proceeding that appellant is unable to produce the defendant due to foreign policy decisions when the defendant voluntarily fled the country prior to his initial court appearance date."

*Id.* at 911–12.

To the State, that the defendants were deported is a difference without significance. As it sees it, these cases are identical to *Fred W. Frank* and *Professional Bail Bonds* because "each defendant in this case made the decision to reside in the United States illegally and thus subject himself to deportation upon arrest." The State concludes, therefore,

that the defendants' actions in this case were voluntary, just as were the defendants' actions in *Fred W. Frank* and *Professional Bail Bonds.*

We do not agree. Md. Rule 4–217(i)(2) makes clear the focus of the decision to strike the forfeiture of a bail bond is the action of the defendant. In *Wiegand v. State,* referring to Md. Rule 4–217(i)(2), we stated:

"Under this Rule, the court is required to strike out the forfeiture, in whole or in part, whenever either the defendant or the surety shows reasonable grounds for the defendant's failure to appear. Significantly, the focus is on the defendant's nonappearance and the validity of any reasons for that nonappearance, rather than on the bondsman or issues affecting the bondsman's assessment of the risk of posting bond."

363 Md. at 196–97, 768 A.2d at 48. The Court of Special Appeals in *Pantazes v. State,* 153 Md.App. 23, 40, 834 A.2d 975, 984 (2003), similarly explained:

"At the most basic level, *the fate of the collateral depends upon the behavior of the defendant,* not upon the behavior of any third person, be that third person an accommodation surety or a professional 'surety insurer.' Although, to be sure, subsections (i) and (j) provide some procedural protections for both accommodation sureties and professional bail bondsmen, the primary focus remains at all times fixed on the defendant. The critical act that triggers forfeiture is the behavior of the defendant in failing to appear in court when required. The focus is not on the behavior of the surety or on the behavior of the State as it may affect the surety."

(Emphasis in original).

Unlike the defendants in *Fred W. Frank* and *Professional Bail Bonds,* the defendants here did not voluntarily leave the country or deliberately evade prosecution. Rather, although each of them, except one, had an I.C.E. detainer filed against him or had confessed to being in the country illegally, all of the defendants remained in government custody, even after

bond was posted until they were deported in accordance with federal law. They, therefore, could not, and did not, leave the country of their own volition. As such, we conclude that *Fred W. Frank* and *Professional Bail Bonds* are inapposite.

Deportation is similar to extradition, which both this Court, *Tyler*, 206 Md. at 138–39, 110 A.2d at 532, and the Supreme Court, *Taylor v. Taintor*, 16 Wall. 366, 83 U.S. 366, 369, 21 L.Ed. 287, 288 (1873), have recognized as an act of law. Both acts are intervening events, triggered by one government taking custody from another government of an individual and removing that individual to the taking government's jurisdiction. The principal difference between deportation and interstate extradition is that interstate extradition is directed by state law,[16] whereas deportation is directed by federal immigration law. If the defendants in this case had been extradited to another state for criminal acts committed in that state, the reasonable grounds requirement of Rule 4–217(i)(2) would have been satisfied and the fact that the defendant was in this State, knowing that he had committed the criminal act that led to his extradition would not be a defense to the surety's suit to strike the forfeiture of its bail bond. There simply is no basis for distinguishing extradition in this respect from the deportations at issue in the present case. Therefore, the State's argument that the defendants in this case voluntarily deported

---

**16.** U.S. Const. art. IV, § 2, cl. 2 provides:

"A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."

In *Michigan v. Doran*, the Supreme Court explained that under this provision interstate extradition was intended to be a summary and mandatory executive proceeding derived from the language of the extradition clause of the United States Constitution, which requires that a fugitive from justice found in another state be delivered to the state from which he or she fled on demand of that state's executive authority. 439 U.S. 282, 287, 99 S.Ct. 530, 534, 58 L.Ed.2d 521, 526 (1978) (citing *Biddinger v. Commissioner of Police*, 245 U.S. 128, 132–33, 38 S.Ct. 41, 42, 62 L.Ed. 193, 197–98 (1917); *Appleyard v. Massachusetts*, 203 U.S. 222, 227, 27 S.Ct. 122, 123, 51 L.Ed. 161, 163 (1906)).

themselves by entering, and remaining in, the country illegally is unavailing.

As noted above, the State also argues that the appellant failed to demonstrate that it and/or the defendants fully pursued all the federal administrative actions that could have delayed the defendants' deportation and concludes that the appellant, having failed to meet the standard required by Rule 4–217(i)(2), is not entitled to have the forfeiture of its bonds stricken. It notes, in that regard, that the appellant carried the burden of persuasion on its motion to strike.

 We again disagree. At the outset, we note that this was not the basis for the Circuit Court decisions; neither of the Circuit Court judges relied on the failure to pursue potential administrative remedies for their respective judgments. Whether the defendant could have requested a delay is not responsive to the issue in this case of whether the act of deportation constituted reasonable grounds pursuant to Rule 4–217(i)(2). Acts that qualify as "reasonable grounds" are, as *Professional Bail Bonds* and *Fred W. Frank* make clear, intervening events, which are the products of an act of the obligee, of god, or of law. In this case, even had the defendants and/or surety unsuccessfully pursued an administrative remedy to delay or otherwise prevent deportation, the question would still remain whether the defendants' deportation qualified as an act of law, and thus was a "reasonable ground" for the defendants' failure to appear in court. Adopting the State's view, which requires a surety to ensure that each defendant has exhausted all possible administrative ends, shifts the focus in the "reasonable grounds" analysis from the acts of the defendant to the acts of the surety, an improper focus under our precedents. *See Wiegand v. State*, 363 Md. 186, 196–97, 768 A.2d 43, 48 (2001) (observing that the application of Rule 4–217(1)–(2) is triggered by the acts of the defendant). As noted above, the act of deportation is an act of law and constitutes reasonable grounds under Rule 4–217(i)(2).

We are also not persuaded by the State's argument that the appellant failed to present evidence that the defendants were

deported. While it is true that the deportation documentation provided by I.C.E. and attached to the amended petitions to strike are not supported by affidavits, no party, including the Circuit Court judges, questioned whether the defendants were in fact deported. Neither of the judges cited it as the basis for their respective decisions. Indeed, the record itself contains ample documentation from I.C.E. stating, in some form, that the defendants were deported.

The State also argues that allowing a bond company such as the appellant to have a forfeited bond stricken under the facts and circumstances of this case would permit inequitable bail practices because it would allow the bondsman to avoid risk when it posts a bond for a defendant who has a detainer filed against him, or who the bondsman otherwise knows has entered the country illegally. As noted above, the State maintains that bail bond companies should not be permitted to disavow responsibility for a bond when the company already knows that the defendant may be subject to deportation. We understand, and within the bounds of the law, share the State's concern that striking the forfeited bond would allow bondsmen to post bail for individuals whom the bondsman already knows are at risk of being deported.[17]

We, however, also understand that not all persons subject to an I.C.E. detainer or otherwise living in the country illegally are deported, and that bail bond companies represent only one component of the bail process. We understand further that the purpose of the release of a pre-trial defendant and the bail bond system, generally, is to limit the detention of accused persons prior to trial. Judge Wilner, writing for the Court of

---

**17.** The Court Commissioner first sets the bond. The record makes clear that, in each of the defendants' cases, the Court Commissioner was notified by the federal authorities that either the defendant had an I.C.E. detainer filed against him or the defendant had confessed that he was in the country illegally. In each case, the Court Commissioner also knew or should have known that the defendant was an illegal immigrant when it set the bond. It would therefore also be inequitable to permit the State to retain a posted bail bond for a deported defendant, despite the fact that it knew or should have known that the defendant may be deported.

Special Appeals, has similarly stated, "The requirement of bail bonds, secured by collateral or the undertaking of a surety, is a vital part of our core commitment to avoid, whenever possible, the pre-trial detention of accused persons." *Wiegand v. State,* 112 Md.App. 516, 523, 685 A.2d 880, 883 (1996). Accordingly, it simply is not Maryland law that bail must be denied merely because an individual is subject to an I.C.E. detainer or at risk of being deported.

For the foregoing reasons, we reverse the decisions of the Circuit Court of Baltimore County.

JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY BALTIMORE COUNTY.